IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DAVID A. GEORGE and
TINA N. GEORGE,

      Plaintiffs,

v.                                        Case No. 2:08-cv-0141

KANAWHA COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MIKE RUTHERFORD,
OFFICER J. M. VERNON,
KANAWHA COUNTY HUMANE SOCIETY,
OFFICER DICK COLL, and
SOUTH CENTRAL REGIONAL JAIL,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

On March 3, 2008, plaintiffs David A. George and Tina N. George, *pro se*, filed a Complaint under 42 U.S.C. § 1983 (docket # 1), alleging that the defendants violated their civil rights in connection with the arrest and incarceration of Tina George on September 17, 2007, the citation of David George on October 10, 2007, and the re-filing of charges against Tina George on April 10, 2008.[1] They seek compensatory damages. Pending before the court is the Motion to Dismiss filed on April 10, 2008 (# 15), by

_____

[1] It is not clear whether Plaintiffs also present allegations concerning the citation of David George on February 27, 2008. On that date, defendant Vernon conducted a traffic stop of a vehicle driven by plaintiff David George, and cited him for failure to change address on a driver's license, in violation of W. Va. Code § 17B-2-13, and a stop sign violation, alleged to be a violation of W. Va. Code § 17-2-5. Article 17-2-1 *et seq.* of the Code was repealed in 1995. It is possible that Deputy Vernon meant to cite W. Va. Code § 17C-3-4. State v. George, Case Nos. 08M-3271 and 3272.

defendants Kanawha County Sheriff's Department ("KCSD"), Sheriff Mike Rutherford ("Rutherford"), and Deputy J.M. Vernon ("Vernon").

## FACTUAL AND PROCEDURAL BACKGROUND - TIMELINE

Plaintiffs' Complaint alleges that at approximately 11:30 a.m., September 17, 2007, Tina N. George was at the residence she shares with her ex-husband, David A. George, 561 Campbells Creek Drive, Charleston, West Virginia, when Humane Officer Dick Coll arrived at the residence and complained that Plaintiff's dog, a Chihuahua, was chained outside without a doghouse. (Complaint, # 1, at 1).[2] Ms. George alleges that she informed Coll that the dog is an inside dog and that no outside doghouse was necessary. She states this was the second time Officer Coll visited regarding the alleged animal cruelty. Ms. George was not cited either time for animal cruelty. Id.

Ms. George called Kanawha County 911 at approximately 12:00 p.m. to report that Coll was harassing her. Id. Shortly thereafter, Deputy J. M. Vernon of the Kanawha County Sheriff's Department arrived at the residence. Plaintiffs' complaint quotes from defendant Vernon's report and, after each quotation, adds Tina George's allegations and arguments. Id., at 1-4. In a nutshell, it appears that Tina George was cursing at Officer Coll and was

---

[2] A status conference on this matter was conducted before the undersigned on June 19, 2008 (# 28). During the status conference, plaintiffs David A. George and Tina N. George testified that they live at the same residence at 561 Campbells Creek Drive, Charleston, West Virginia, which is owned by David George.

highly agitated.  Id., at 2-3.  Defendant Vernon handcuffed her.
As Vernon was placing her in the backseat of the cruiser, Ms.
George "head-butted" the door, leaving a dent in the driver's side
rear door, which buckled the paint.  Id., at 3-4.  Ms. George
continued to curse and scream, now directing her attention to
Deputy Vernon.  Id., at 4.  Ms. George alleges that she was not
advised of her Miranda[3] rights, and that the relevant documents at
the Magistrate Court of Kanawha County have been altered.  Id., at
5.

The criminal complaint filed in the Magistrate Court states,
in pertinent part, as follows:

> I, the Undersigned complainant, upon my oath or
> affirmation, state the following is true and correct to
> the best of my knowledge and belief.  On or about 09-17-
> 07 in Kanawha County, West Virginia, in violation of W.
> Va. Code § 61-3-30:
> Destruction of property - if any person, unla[w]fully,
> but not feloniously, take and carry away, destroy, injure
> or deface any property real or personal not his own.  61-
> 3-30 Misdemeanor - up to 1 year and/or $500.
> Obstructing an officer - any person who by threats,
> menaces, acts or otherwise, shall forcibly or illegally
> hinder, obstruct, or oppose, or attempt to obstruct or
> oppose, or shall counsel, advise or invite others to
> hinder, obstruct, or oppose any officer in this state
> (whether civil or military) in the lawful exercise or
> discharge of his official duty, is obstructing an
> officer.  61-5-17 Misdemeanor - $50 to $500 and possibly
> up to 1 year.
>
> I further state that this complaint is based on the
> following findings:
>
> Further stated: On 09-17-07 I responded to 561

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

3

Campbells Creek Dr. in reference to a disturbance involving the Kanawha County Humane Officer. Upon my arrival, I made contact with the suspect, Ms. Tina George. She was cursing at the Humane Officer, and approaching him in a aggressive stance. At this time I questioned her about the situation and attempted to calm her down multiple times. She began to curse at me screaming and yelling causing a large disturbance. Following several failed attempts to get her to stop cursing at us and calm down, I attempted to arrest her. She pulled away from me and refused to calm down. I was able to finally secure her and place her at the rear of my cruiser. As I started to unlock my door, she head butted my door frame and put a large indent[at]ion on the driver side rear door. At this time I secured her in the rear of my cruiser where she continued to curse and scream at me during the entire process. My cruiser suffered a large indent[at]ion to the door frame buckling the paint. I also got a written statement from the Humane Officer concerning George's behavior.

<u>State v. Tina Nicole George</u>, Case Nos. 07M12465 and 07M12466. In the space immediately above the signature of the issuing magistrate, Traci C. Strickland, boxes were checked indicating "Probable Cause" and "Warrantless arrest."

Plaintiffs' allegation that Magistrate Court documents were altered, (complaint, # 1, at 5), appears to refer to a section of the criminal complaint immediately above the signature of Traci C. Strickland, magistrate, dated September 17, 2007. It reads as follows:

On this complaint, sworn or affirmed before me and signed this date by complainant in my presence, the item(s) checked below apply:
    box with X          Probable Cause
    empty box          Summons issued
    empty box          Warrant issued
    solid box and X    Warrantless arrest
    empty box          No probable cause found

(# 15-2, Ex. A.)   The boxes do not line up perfectly with the corresponding text.   It appears to the court that Magistrate Strickland was indicating that Tina George was arrested without a warrant and that the magistrate found probable cause to believe that Ms. George committed the offenses charged.

Ms. George made her initial appearance on September 17, 2007. Bond of $250.00 was set; David George posted the bond on September 18, 2007, and Tina George was released.  She was notified to appear on December 5, 2007 for a bench trial.  The officer did not appear and the charges were dismissed.

Plaintiffs further allege that on October 10, 2007, defendant Vernon wrongfully cited David George for driving on an invalid license and, during the traffic stop, left his cruiser's flashing lights on, although he knew that Tina George has a seizure disorder which may be triggered by flashing lights.  Id., at 5-6.

On March 3, 2008, Plaintiffs filed their complaint.  Summonses were issued on March 18, 2008 (## 4,5), and reissued on March 20, 2008, to correct an omission (## 6, 7).

On April 10, 2008, Deputy Vernon re-filed the charges against Tina George, which were identical to the September 17, 2007 charges.  State v. George, Case Nos. 08M5298 and 08M5299.  It is not clear whether a warrant was issued for Tina George's arrest. Trial was set for October 27, 2008.  Once again, no officer appeared and the charges were dismissed.

Viewing the complaint in the light most favorable to the plaintiffs, it appears that the Georges allege that their constitutional rights were violated by:

- Vernon arresting Tina N. George and not arresting Officer Coll (false arrest and violation of equal protection and First Amendment);

- Vernon failing to take Tina George to the hospital after she head-butted the cruiser (cruel and unusual punishment);

- Vernon failing to advise her of her <u>Miranda</u> rights (5th and 6th Amendments);

- Vernon advising Officer Coll to enter the Georges' residence without a warrant to seize the dog (4th Amendment); and

- Vernon harassing and retaliating against the Georges by citing them and filing charges against them (malicious prosecution and retaliation).

Nothing in the complaint alleges that KCSD or Sheriff Rutherford did anything to the plaintiffs.  The court assumes that KCSD and Sheriff Rutherford were named as parties defendant because they employ defendant Vernon.

On April 10, 2008, defendants KCSD, Rutherford and Vernon filed a Motion to Dismiss and a Memorandum in Support (## 15, 16). Plaintiffs filed a response (# 24); these defendants filed a reply (# 23); and Plaintiffs filed a response to the reply, which the court will refer to as a surreply (# 25).  Although surreplies are

generally not filed, the court will consider all of Plaintiffs'
documents.

## GROUNDS FOR DISMISSAL

In their Motion to Dismiss, these defendants raise five
grounds for dismissal:

(1) Failure to allege that the plaintiffs' claimed constitutional
deprivations were caused by the execution of an official policy or
custom of the KCSD or Sheriff Rutherford;

(2) Claims against defendant Vernon are premature because the
underlying criminal charges against Tina George are still pending;

(3) Tina George's equal protection rights were not violated because
the complaint establishes that she was not similarly situated to
anyone who was treated differently;

(4) Seizure of Tina George's dog was not unlawful because Officer
Coll was under a statutory duty to do so, and/or defendant Vernon
is entitled to qualified immunity; and

(5) Removal of the dog from the Georges' residence was not unlawful
because Officer Coll was under a statutory duty to do so, and/or
defendant Vernon is entitled to qualified immunity.

In their Reply (# 23), these defendants assert three
additional grounds for dismissal:

(a) Plaintiffs have failed to allege an "affirmative link" between
Deputy Vernon's failure to obtain medical care for Tina George when
she head-butted his cruiser, and her experience of a seizure with

7

subsequent neck injury, and thus failed to state a claim upon which relief can be granted;

(b) Deputy Vernon is entitled to qualified immunity for arresting Tina George for cursing at him because the law was not clearly established; and

(c) The failure to administer Miranda warnings is not a violation of Tina George's Fifth Amendment rights.

In two very lengthy documents (## 24 and 25), the plaintiffs responded to each ground raised by these defendants.  The parties' arguments will be summarized with respect to each ground as it is addressed.

(1)(a) Official Policy and/or Custom (KCSD and Sheriff Rutherford)

Defendants KCSD and Rutherford succinctly and appropriately cite Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), for the proposition that a local governmental entity such as the Sheriff's Department is a "person" within the meaning of 42 U.S.C. § 1983, and thus liable for constitutional torts, only when the tort is caused by the entity's official policies or customs.  (Mem., # 16, at 2-3.)

Plaintiffs argue as follows: if it is the official policy and/or custom for the KCSD to give Miranda warnings, to obtain a search warrant, to obtain medical care for arrestees, to document (for future reference) the medical condition of arrestees, and to tell the truth on court documents, then these policies and/or

8

customs were not followed.  (Response, # 24, at 24-25.)  In other words, it appears to the court that Plaintiffs are alleging that the KCSD violated its customs and policies – not that the KCSD acted in conformity with its customs and policies.

As noted above, the body of Plaintiffs' complaint does not mention the KCSD or Rutherford.  In Monell, the Supreme Court ruled that a local governmental entity such as the KCSD, will not be liable unless its official policy of some nature caused the constitutional tort.  To give a simple and extreme example, if the KCSD had an official policy that all arrestees must be tortured, then the KCSD would be liable for the actions of its officers who carried out that policy.  If the KCSD had an official policy that arrestees must not be tortured, and an arresting officer did torture an arrestee, then the arresting officer could be liable, but the KCSD would not.

A public official such as Sheriff Rutherford may be sued in either his official or his individual capacity.  Plaintiffs do not specify their intent.  Suing Sheriff Rutherford in his official capacity is equivalent to suing the KCSD, and the law relating to official customs and policies would apply to him.

Based on Monell, the undersigned proposes that the presiding District Judge **FIND** that Plaintiffs' complaint fails to state a claim upon which relief can be granted as to defendant Kanawha County Sheriff's Department and defendant Rutherford in his

9

official capacity.

(1)(b) Supervisory Liability (Sheriff Mike Rutherford)

To the extent that Plaintiffs argue that they are suing Sheriff Rutherford in his individual capacity, the court must assume that they are claiming he is liable to them as the ultimate supervisor of defendant Vernon.  It is well-settled that the doctrine of *respondeat superior*[4] is inapplicable to actions under Section 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).  In order to prevail, Plaintiffs must show that Sheriff Rutherford was deliberately indifferent in the face of a pervasive and unreasonable risk of harm to citizens by the actions of defendant Vernon, and that Rutherford's inaction had an affirmative causal link to the harm suffered.  See Shaw v. Stroud, 13 F.3d 791, 802 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368, 377 (4th Cir. 1984)).

Inasmuch as Plaintiffs have made no allegation against Sheriff Rutherford, other than naming him in the complaint, the undersigned proposes that the presiding District Judge **FIND** that Plaintiffs have failed to state a claim upon which relief can be granted as to defendant Rutherford in his individual capacity.

(2) Unlawful Arrest/Malicious Prosecution - Pending Charges

Defendant Vernon argues that plaintiff Tina George's claim

---

[4] "Let the master answer.  This maxim means that a master is liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent."  Black's Law Dictionary rev. 4th ed., at 1475 (1968).

against him is an attempt to assert a constitutional illegal arrest/malicious prosecution cause of action, and that she must show that the underlying criminal action was terminated in her favor. (Response, # 16, at 4-5.)

This contention is unpersuasive for two reasons. First, Plaintiffs have submitted documentation which indicates that the most recent charges against Tina George were dismissed. Thus it appears that the charges were terminated in her favor twice. Second, Plaintiffs' complaint alleges both false arrest and malicious prosecution. The Supreme Court has held that the constitutional tort of false arrest matures at the time of the arrestee's appearance before a magistrate, not when charges are subsequently dropped. <u>Wallace v. Kato</u>, 549 U.S. 384 (2007).

The undersigned proposes that the presiding District Judge **FIND** that Plaintiffs have stated a claim upon which relief can be granted as to defendant Vernon for the constitutional torts of false arrest and malicious prosecution.

<u>(3) Equal Protection</u>

Plaintiffs' complaint alleges that Tina George "was arrested, and not Humane Officer, directly violates 14th Amend U S Const, to equal protections of the laws." (# 1, at 2.) The complaint argues that Coll should have been arrested because he harassed Tina George and was on the Georges' property without their permission. Defendant Vernon argues that Ms. George's "class of one" Equal

11

Protection claim is legally insufficient because there is little similarity between the conduct of Ms. George and Officer Coll. (# 16, at 6.)

In <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000), the Supreme Court noted its prior recognition of "equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." The Court noted that the purpose is to protect every person "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." <u>Id.</u>, (quoting <u>Sioux City Bridge Co. v. Dakota County</u>, 260 U.S. 441, 445 (1923)). Justice Breyer, in a concurring opinion, was persuaded by an extra factor, described as "vindictive action," "illegitimate animus," "ill will," or "an illegitimate desire to 'get' him." <u>Id.</u>, at 565-66. There is no suggestion by the Georges that the express terms of a statute are discriminatory. Rather, the Georges appear to claim that Ms. George was the victim of intentional and arbitrary discrimination by improper execution of a statute by defendant Vernon.

Ms. George called 911 to report that Officer Coll was harassing her. When Officer Vernon arrived, he was confronted by Ms. George in an admittedly "agitated state." (# 1, at 1.) Ms.

12

George was cursing Officer Coll.  <u>Id.</u>, at 2.  When Deputy Vernon attempted to calm her, she cursed Vernon.  There is no suggestion that Officer Coll was cursing anyone.  The use of profanity short of "fighting words" to criticize the conduct of a law enforcement officer is protected First Amendment speech.  <u>City of Houston v. Hill</u>, 482 U.S. 451, 461 (1987); <u>Lewis v. City of New Orleans</u>, 415 U.S. 130 (1974); <u>Terminiello v. Chicago</u>, 337 U.S. 1 (1949).  At this stage of the proceeding, the court cannot determine whether Officer Coll was acting lawfully, or whether Deputy Vernon bore some animus, ill will, or an illegitimate desire to "get" Tina George.

The undersigned proposes that the presiding District Judge **FIND** that, taking the allegations of the complaint as true and construing them liberally, Plaintiffs have stated a claim against defendant Vernon for violating Tina George's right to equal protection of the law.

<u>(4) Deprivation of Dog without Due Process/Qualified Immunity</u>

<u>(5) Unlawful Search and Seizure/Qualified Immunity</u>

The complaint alleges that Deputy Vernon advised Officer Coll to enter the Georges' residence without a warrant, to get the dog, thus engaging in an unlawful conspiracy to violate Plaintiffs' rights.  (# 1, at 5.)  Defendant Vernon contends that Officer Coll was acting in conformity with W. Va. Code § 7-10-4, and that the mere taking of the dog (without regard to subsequent due process

13

protections) does not give rise to a constitutional violation. (#
16, at 6-7.)  As to both the due process claim and the Fourth
Amendment claim, defendant Vernon asserts that he is entitled to
qualified immunity.

Defendant Vernon disputes Plaintiffs' allegation that Tina
George overheard Deputy Vernon tell Officer Coll to enter the
Georges' residence and to get the dog.  The court, however, must
take the allegations of the complaint as true.  Accordingly, for
the purpose of this document, it will be assumed that Deputy Vernon
instructed Officer Coll to enter, search, and seize the dog.

When defendants in civil rights cases invoke qualified
immunity, federal courts apply the federal qualified immunity
principles set forth in <u>Saucier v. Katz</u>, 533 U.S. 194, 200-02
(2001), <u>Anderson v. Creighton</u>, 483 U.S. 635, 639-641 (1987), <u>Harlow
v. Fitzgerald</u>, 457 U.S. 800, 817-819 (1982), and many other cases.
Government officials performing discretionary functions are
generally protected from civil damages liability if their "conduct
does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known." <u>Harlow v.
Fitzgerald</u>, 457 U.S. at 818; <u>Taylor v. Waters</u>, 81 F.3d 429, 433
(4th Cir. 1996).  In a case in which the defense of qualified
immunity is raised, the court looks to the evidence before it in
the light most favorable to the plaintiff and asks, "do the facts
alleged show the officer's conduct violated a constitutional

14

right?"  <u>Saucier</u>, 533 U.S. at 201.  If so, the next step "is to ask whether the right was clearly established."  <u>Id.</u>

Defendant Vernon argues that "Officer Coll was statutorily authorized to remove Tina George's dog once was [sic] she was taken into custody and arrested."  (# 16, at 6.)  He cites to no case in support of this proposition, although he cites to West Virginia Code Section 7-10-4.  Section 7-10-4(a) provides that "a humane officer shall take possession of any animal . . . known or believed to be abandoned, neglected, deprived of necessary sustenance, shelter, . . . or reasonable protection from fatal freezing or heat exhaustion or cruelly treated or used . . . ."

Following the mandate of <u>Saucier</u>, the first question is to identify the constitutional right(s) allegedly violated.  Taking the allegations of the complaint in the light most favorable to the plaintiffs, the undersigned concludes that the plaintiffs allege that defendant Coll, acting upon the instruction of defendant Vernon, unlawfully and unconstitutionally entered their residence without a warrant and without their consent, and thereafter seized their dog.  The complaint clearly states a claim that defendants Vernon and Coll violated the Georges' Fourth Amendment right to be free of unreasonable searches of their residence.

It is a well settled "principle of Fourth Amendment law that searches . . . inside a home without a warrant are presumptively unreasonable."  <u>Payton v. New York</u>, 445 U.S. 573, 586 (1980).  The

15

only excuse offered by defendants Vernon and Coll for Coll's entry into the Georges' private residence without a warrant is that when Ms. George was arrested by Deputy Vernon, Coll considered the dog to be "abandoned." While W. Va. Code § 7-10-4 does give a humane officer the right to take possession of an abandoned animal, under the circumstances of this case, a dog who is inside an inhabited private residence can hardly be characterized as "abandoned." Moreover, W. Va. Code § 7-10-2 provides that a humane officer's reasonable and necessary right of access to property must be based "upon reasonable cause, and as provided by law." The Fourth Amendment, absent exigent circumstances, requires issuance of a warrant by a neutral and detached judicial officer on probable cause. This constitutional right has been clearly established since before the promulgation of the doctrine of qualified immunity.

The undersigned proposes that the presiding District Judge **FIND** that defendant Vernon is not entitled to qualified immunity for his allegedly unlawful agreement with defendant Coll that Coll commit a warrantless entry into the Georges' residence.

In addition to entering the Georges' residence without a warrant, defendant Coll also seized their dog. While not directly raised by defendant Vernon, the court notes that, in <u>Altman v. City of High Point, NC</u>, 330 F.3d 194, 203 (4th Cir. 2003), the Fourth Circuit held that privately owned dogs are "effects" subject to the

16

protections of the Fourth Amendment.  The undersigned proposes that the presiding District Judge **FIND** that defendant Vernon is not entitled to qualified immunity for his complicity in the seizure of the Georges' dog from their residence, in apparent violation of the Fourth Amendment.

The court will now turn to Plaintiffs' claim that their right to due process of law was violated when their dog was seized and taken to the animal shelter until retrieved.  W. Va. Code § 7-10-4 provides, in pertinent part, as follows:

> (a) * * * a humane officer shall take possession of any animal, . . ., known or believed to be abandoned, neglected, deprived of necessary sustenance, shelter, medical care or reasonable protection from fatal freezing or heat exhaustion, or cruelly treated or used, . . . .
> (b) The owner or persons in possession, if his or her identity and residence is known, of any animal seized pursuant to subsection (a) of this section shall be provided written notice of the seizure, his or her liability for the cost and care of the animal seized as provided in this section and the right to request a hearing before a magistrate in the county where the animal was seized.  The magistrate court shall schedule any hearing requested within ten working days of the receipt of the request.  The failure of an owner or person in possession to request a hearing within five working days of the seizure is prima facie evidence of the abandonment of the animal.  At the hearing, if requested, the magistrate shall determine if probable cause exists to believe that the animal was abandoned, neglected or deprived of necessary sustenance, shelter, medical care or reasonable protection from fatal freezing or heat exhaustion, or otherwise treated or used cruelly as set forth in this section.
> (c) Upon finding of probable cause, or if no hearing is requested and the magistrate finds probable cause based upon the affidavit of the humane officer, the magistrate shall enter an order awarding custody of the animal to any humane officer for further disposition in accordance with reasonable practices for the humane

17

treatment of animals.

W. Va. Code § 7-10-4 (2006).  In other words, humane officers are authorized, by State statute, to seize an abandoned dog and required to provide post-seizure written notice and an opportunity for a hearing.

In Bogart v. Chapell, 396 F.3d 548, 560 n.11 (4th Cir. 2005), a case involving the euthanization of more than 200 dogs and cats seized from a residence, the Fourth Circuit recognized the continuing vitality of the Parratt/Hudson doctrine,[5] which stands for the principle that a deprivation of property by a person acting under color of state law, whether negligent or intentional, "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  In Bogart, the appellate court found that the dog owner did not have a viable § 1983 due process claim, arising out of the euthanization.  Id., at 563.

Plaintiffs were not permanently deprived of their dog; it was kept at the animal shelter for approximately one day.  For that reason, and because West Virginia provides a meaningful post-deprivation remedy, the undersigned proposes that the presiding District Judge **FIND** that Plaintiffs' complaint fails to state a

---

[5] Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part by Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984); Zinermon v. Burch, 494 U.S. 113 (1990).

18

claim for a violation of their right to due process.

(a) Medical Care and Causation

Plaintiff Tina George does not dispute that she head-butted the cruiser while handcuffed, although she contends that her agitation was caused by the actions of Officer Coll and Deputy Vernon. (# 1, at 3.) Plaintiffs claim that Deputy Vernon, having been informed of Tina George's seizure disorder, had a duty to take her to the hospital after she head-butted the cruiser, and to record her condition in the county records for the use of jail officials. Id. Noticeably absent from the complaint is any allegation that Tina George told defendant Vernon that she had suffered a significant injury, or that she displayed evidence of having a serious medical need after she head-butted the cruiser.

Defendant Vernon correctly asserts that the appropriate constitutional claim with respect to treatment of a pretrial detainee is under the Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual Punishment Clause of the Eighth Amendment. Nonetheless, the standard is the same: deliberate indifference to a serious medical need. Martin v. Gentile, 849 F.2d 863, 870-71 (4th Cir. 1988). Plaintiffs have made no allegation that Tina George displayed a serious medical need to defendant Vernon when he transported her. Informing defendant Vernon that she has a seizure disorder, when she was not experiencing symptoms requiring immediate medical attention, did

not raise a duty to administer care to her. The undersigned proposes that the presiding District Judge **FIND** that Plaintiffs' complaint fails to state a claim for a violation of Tina George's right to due process as secured by the Fourteenth Amendment with respect to her claim that she was subject to deliberate indifference to her serious medical need.

(b) First Amendment

The criminal complaint filed by defendant Vernon against plaintiff Tina George charges two offenses: obstructing an officer and destruction of property. The statement on the complaint alleges that she cursed Coll and approached him "in a aggressive stance." She then cursed, screamed and yelled at defendant Vernon. It was at that point, when she failed to calm down, that defendant Vernon attempted to arrest her. The court assumes that defendant Vernon claims that she obstructed him by cursing, screaming, and yelling.

Defendant Vernon argues that she was arrested for destruction of property. (# 23, at 13.) This assertion is not supported by the criminal complaint, which indicates that she was arrested and handcuffed *before* she head-butted the cruiser.

Defendant Vernon also contends that if she were arrested for cursing at him in violation of the First Amendment, then it has not been clearly established that her speech was protected. The undersigned disagrees. As noted by defendant Vernon, the Supreme

Court wrote in City of Houston v. Hill, 482 U.S. 451, 461-63 (1987), that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," and "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  The Fourth Circuit subsequently wrote, in Wilson v. Kittoe, 337 F.3d 392, 399 n.3 (4th Cir. 2003), a case in which qualified immunity was denied a police officer, that "[p]eaceful verbal criticism of an officer who is making an arrest cannot be targeted under a general obstruction of justice statute such as Virginia's without running afoul of the First Amendment."  In an unpublished opinion, Lowe v. Spears, No. 07-1497, 258 Fed. Appx. 568 (4th Cir. 2007), the Fourth Circuit denied qualified immunity to a police officer based on City of Houston.  Moreover, the Supreme Court of Appeals of West Virginia has held that "forcible or illegal conduct that interferes with a police officer's discharge of official duties" constitutes statutory obstruction, State v. Carney, 663 S.E.2d 606 (W. Va. 2008), but that "lawful speech will not support an obstruction charge." Wilmoth v. Gustke, 373 S.E.2d 484, 485 (W. Va. 1988).  Thus there is ample authority which placed defendant Vernon on notice that arresting someone for cursing, screaming, and yelling at him is a violation of the First Amendment.

21

The undersigned proposes that the presiding District Judge **FIND** that plaintiff Tina George has stated a claim upon which relief can be granted with respect to her First Amendment/false arrest claim and that, at this stage of the proceedings, defendant Vernon is not entitled to qualified immunity.

(c) Fifth Amendment – *Miranda*

The complaint and other documents are replete with allegations that Tina George was not advised of her rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).  The failure to give Miranda warnings is significant only if an arrestee is interrogated by police officers while the arrestee is in custody, and the prosecution then attempts to use the arrestee's statements against him in court.  None of those circumstances applies to plaintiff Tina George.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiffs have failed to state a claim upon which relief can be granted with respect to Miranda warnings.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the Motion to Dismiss (# 15) be granted as to defendants KCSD and Rutherford, and denied as to defendant Vernon.  It is further **RECOMMENDED** that Plaintiffs' claims relating to failure to take Tina George to a hospital and failure to give her Miranda warnings should not go forward.

The parties are hereby notified that this Proposed Findings

22

and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and three days (mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841,846 (4th Cir. 1985); United States v. Schonce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is hereby directed to mail a copy of this Proposed Findings and Recommendation to Plaintiffs, who are acting *pro se*, and counsel of record.

ENTER: December 8, 2008

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

23