**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**


**DAVID A. GEORGE and
TINA N. GEORGE,**

      **Plaintiffs,**

**v.**                              **Case No. 2:08-cv-00141**

**KANAWHA COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MIKE RUTHERFORD, OFFICER
J. M. VERNON, OFFICER DICK COLL,
NICHOLAS FRYE, TERRY MITCHELL,
STEPHANIE RHODES, SHERRY QUEEN,
MICHELL HARRISON, MISTY GARBIN,
AARON MEADOWS,**

      **Defendants.**


**PROPOSED FINDINGS AND RECOMMENDATIONS**

On January 20, 2009, with leave of court, plaintiffs David A.
George and Tina N. George, *pro se*, filed an Amended Complaint under
42 U.S. C. § 1983 (docket # 62), making additional allegations that
the defendants violated their civil rights in connection with the
arrest and incarceration of Tina George on September 17, 2007.
They seek compensatory damages, court costs, and fees.  Pending
before this court is the Motion to Dismiss Amended Complaint filed
on March 31, 2009 (# 80), by Sherry Queen, Michell Cutlip (formerly
known as Michell Harrison), Misty Bailey (formerly known as Misty
Garbin), and Aaron Meadows, all licensed practical nurses ("the LPN

defendants") working for PrimeCare Medical of West Virginia, Inc. ("PrimeCare") at South Central Regional Jail ("SCRJ") at the time of Tina George's incarceration.  The LPN defendants ask that the Amended Complaint be dismissed or, in the alternative, that Summary Judgment be granted.  Plaintiffs responded on April 10, 2009 (##85, 86) and April 15, 2009 (#87).

## AMENDED COMPLAINT ALLEGATIONS

On February 19, 2009, a status and scheduling conference was conducted by the undersigned (#61).  At that time, Plaintiffs asserted that they had filed an Amended Complaint with the District Clerk on January 20, 2009.  Plaintiffs presented documents to the court showing transmission of the Amended Complaint to the Clerk. The undersigned instructed the Clerk to enter the Amended Complaint as received on January 20, 2009 (#62).

Plaintiffs' Amended Complaint alleges that Deputy J. M. Vernon ("Vernon") knew that Tina George had a seizure disorder when she was arrested at approximately noon on September 17, 2007, because she advised him at that time. (# 62 at 1.)  It is noted that at the time of her arrest, Tina George was highly agitated when Deputy Vernon handcuffed her. (Complaint, #1 at 2-3.)  As Vernon was placing her in the backseat of the cruiser, Ms. George "head-butted" the door, leaving a dent in the driver's side rear door, which buckled the paint.  Id., at 3-4.

Vernon made his criminal complaint relating to the arrest of

Tina George at approximately 1:00 p.m. on September 17, 2007, but did not document Tina George's seizure disorder medical condition in that document.  (#62 at 1.)

Tina George advised booking clerks and medical staff at the South Central Regional Jail ("SCRJ") about her seizure disorder and provided specific medication details, including the name and address of her pharmacy.  (#62 at 2-3.)  She states that she provided this information to PrimeCare employee Sherry Queen "at 0238 on 9-18-07" during her incarceration at the jail facility and told her that her medications were "Phenobarb & 1 more." (#62 at 2.)  She states that she  was "at SCRJ for almost 12 hours before medical screening."  (Id.)

Plaintiffs allege that Tina George had a seizure approximately 24 hours after her arrest, and two seizures at unspecified times while incarcerated at SCRJ.  (#62, at 5-6.)

In Plaintiffs' response to defendant Vernon's Motion to Dismiss, they assert that three seizures took place.  Plaintiffs' describe the seizures as "one on the toilet, one on the bunk, and one in the booking area."  (#77 at 2.)  It is noted that a similar description is included in Plaintiffs' response to the LPN defendants' Motion to Dismiss (#85 at 4-5, 10-11, 22).

In the Amended Complaint, Plaintiffs state that "immediately following the seizure activity inmate held her head and cried, "It hurts."  (#62 at 4.)  Plaintiffs assert Tina George was injured at

3

SCRJ during her seizure activity (which occurred approximately 24 hours after her initial incarceration), was denied medical attention and seizure medication. (#62 at 4-5.)

In a supplemental response, Plaintiffs state that Tina George had "scratches/bruises on her upon her release." (#87 at 16.)

## SUMMARY JUDGMENT STANDARD OF REVIEW

Per Rule 12(d) of the Federal Rules of Civil Procedure, the LPN defendants' Motion to Dismiss, and alternative Motion for Summary Judgment, must be treated as one for summary judgment. Rule 12(d) provides:

> If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d) (2007).

In evaluating summary judgment motions, Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c) (2007). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light

most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

If the moving party meets this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule –  set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e) (2007).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in

his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

As *pro se* plaintiffs, David and Tina George received a Roseboro[1] notice by Order entered June 30, 2009 (# 29).  They have responded to the LPN defendants' motion in three documents (## 85, 86, and 87).

## ARGUMENTS OF THE PARTIES

In their alternative Motion, the LPN defendants assert that Plaintiffs' Amended Complaint fails to set forth any specific allegations of wrongdoing, improper acts, failure to act, or other conduct on the part of defendants that arises to the level of a violation of Tina or David George's statutory or constitutional rights (#80 at 2-3).  The LPN defendants further argue that Plaintiffs' Amended Complaint fails to state a cause of action that is based upon a theory of deliberate indifference to Tina or David George's serious medical needs (#80 at 3-4).  The LPN defendants assert that they were "acting under color of state law.... are entitled to good faith, qualified immunity.... are not liable to plaintiffs for monetary damages because the conduct of these defendants did not violate the plaintiffs' clearly

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

established statutory or constitutional rights of which a reasonable person would have known." (#80 at 8.) They further assert that the "amended complaint asserts no basis for a claim of entitlement to recovery on the part of David George." (Id.) As a attachment to the Motion, each LPN defendant submitted an affidavit stating that he/she either had no personal contact with Ms. George or properly administered care or medication to Ms. George. (##80-2, 80-3, 80-4, 80-5.)

Plaintiffs argue that the LPN defendants' alternative Motion should not be granted because Tina George's civil rights were violated by the LPN defendants when they failed to provide her evening dose of Phenobarbital and Keppra on September 17, 2007, to provide her morning dose of Phenobarbital and Keppra on September 18, 2007, to advise her regarding her ability to obtain her medications for seizures, to document her seizure on the toilet, and to document her seizure on the bunk bed. (#85 at 19.)

Plaintiffs assert that Tina George

advised medical intake at 2:38 a.m. on September 18, 2007 that she takes her medications at 6:00 a.m. and 6:00 p.m.... that her last dosages for medications was (sic) at 6:00 a.m. on 9-17-07...that she took Phenobarb (sic) and one more (couldn't recall name of Keppra)...First dose, only Phenobarb (sic), given at 2:05 p.m. 9-18-07. Almost 24 hours after Tina's arrival, logged in med chart for 9:00 a.m. Approximately 32 hours after last dose of 6:00 a.m. 9-17-07. Second dose, only Phenobarb (sic), given at, supposedly, between 5:30 - 6:00 p.m. 9-18-07. Both doses, dispensed only about 4 ½ or so hours apart... Medications were not documentedly (sic) entered in medication chart for right times, on either morning or evening doses for 9-18-07...

7

(Id.)

Plaintiffs conclude that "the county is required to provide
Tina with proper adequate medical care and treatment" and that
"within the only seizure documented, 9-18-07 (1405), Tina hit her
head on a concrete floor advising medical staffer(s) that she hurt
at that time."   (#85 at 22.)   Plaintiffs state that although
"medical staff claims to have checked for redness and/or bruises"
they did not provide take x-rays or transport her to the hospital.
(Id.)   Plaintiffs state that "seizures can indeed be life
threatening."   (#85 at 14.)

In a supplemental response, Plaintiffs state that because "no
pictures were taken...nor were there any witness statements taken,
of/from the 3 seizures Tina had at SCRJ, would indicate strongly
that defendants and/or its legal counsels are trying to hide what
happened to Tina."   (#86-3 at 5; #87 at 15.)

## ANALYSIS

### "Deliberate Indifference" Standard

Conditions of confinement of state pre-trial detainees are
evaluated under the Due Process Clause of the Fourteenth Amendment,
rather than under the Cruel and Unusual Punishment Clause of the
Eighth Amendment.   Nonetheless, the analysis of such claims under
the Fourteenth Amendment shares much in common with the Eighth
Amendment approach.  As noted by the United States Court of Appeals
for the Fourth Circuit in Riley v. Dorton, 115 F.3d 1159, 1166 (4th

Cir. 1997), "[b]oth seek to balance the rights of prisoners and pre-trial detainees against the problems created for officials by the custodial context."  Accordingly, courts may look to Eighth Amendment precedent for guidance in addressing claims brought under the Fourteenth Amendment.

A plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs in order to state a claim under the Eighth Amendment for ineffective medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

A medical condition is serious in two circumstances.  First, a serious medical need exists when it has been diagnosed by a physician as mandating treatment, or the need is so obvious that even a lay person would easily recognize the necessity for medical care. Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U. S. 956 (1991).  Second, a medical condition is serious if a delay in treatment causes a lifelong handicap or permanent loss.  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see also

9

Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard. See Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. See id. Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. See Estelle, 429 U.S. at 106.

Miltier, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and healthcare providers is heavy. It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

Rush v. VanDevander, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); Banks v. Green Rock Correctional Center Medical Dept., 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). For example, in Sosebee, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct might establish deliberate indifference to a serious medical need.

**Material Facts Not in Dispute**

The court assumes that a seizure disorder constitutes a serious medical need.

Tina George personally communicated to the jail staff at booking on September 17, 2007, that she has a seizure disorder (#62 at 2). She advised PrimeCare medical staff at a medical screening on at 2:38 a.m. on September 18, 2007 that she had a seizure disorder and took the medication Phenobarb and another medication, the name of which Tina George could not recall. (Id.) There remains a dispute as to whether the medical screening was conducted by LPN defendant Sherry Queen or another PrimeCare unnamed employee.[2]

At 2:05 p.m. on September 18, 2007, LPN defendant Misty Bailey responded to a medical emergency involving Ms. George at SCRJ (#87 at 5; #80-3 at 2; #80-4 at 4). During this documented seizure in Tina George's holding cell near the booking area, LPN defendant Ms. Bailey rendered aid, provided a physical and visual inspection of Ms. George, took her vital signs, which showed normal blood pressure and respiration rate and a mildly tachycardic pulse rate. (#87 at 5; # 80-3 at 2.) Ms. Bailey noted that following the

---

[2] The affidavit of Sherry Queen, LPN, states that contrary to the Amended Complaint, Tina George was not medically screened by her, but rather by another employee of PrimeCare who is not named in the Amended Complaint. (#80 at 5.) Plaintiffs respond that Sherry Queen's name is on the "chart synopsis as having been the one" to do the medical screening. (#85 at 6; #87 at 1.)

seizure activity, Tina George was able to walk to holding cell H4 where she could be better observed by correctional personnel at the booking desk.  (# 80-3 at 2.)  LPN defendant Michell Cutlip gave Tina George two tablets of Phenobarbital, 64.8 mg. following the documented seizure activity.  (#80-3 at 3; #80-4 at 4.) At approximately 6:00 p.m. on September 18, 2007, Tina George was administered two tablets of Phenobarbital by LPN defendant Aaron Meadows.  (#80-2 at 2.)

Plaintiffs' Amended Complaint (#62) and Responses to the Motion (## 85, 86, 87) do not assert that Ms. George was not provided with immediate medical attention during the documented seizure in the holding cell near the booking area (#62 at 4) or that Ms. George was seriously injured and needed but was not provided immediate medical attention during the alleged seizures "on the toilet" or when she "fell out of bunk" (#62 at 5-6).

Regardless of whether the initial medical screening was performed by LPN defendant Sherry Queen or an unnamed employee of PrimeCare, the affidavits of the LPN defendants show that no one provided Tina George with an evening dose of Phenobarbital and Keppra on September 17, 2007, or a morning dose of the medications on September 18, 2007.  However, it is clear that PrimeCare employee Michell Cutlip followed standard administrative procedures to obtain Ms. George's prescription of Phenobarbital on the morning of September 18, 2009.  (#80-4 at 2-3.) It is admitted by Tina

12

George that she did not provide the name of the second medication, Keppra, to the LPN defendants. (#62 at 2.)

Plaintiffs assert that Tina George had two additional seizures (while on the toilet and in a bunk bed) while in custody on September 17-18, 2007 that were not documented by the LPN defendants. (#62 at 5-6.) LPN defendant Misty Bailey states in her affidavit that when she assessed Ms. George at 2:05 p.m. on September 18, 2007, she found Ms. George to have no sign of injury. Further, Ms. George did not report to her that she had suffered any other seizures during her incarceration and Ms. Bailey had no knowledge that Ms. George had suffered any other seizure since her incarceration.  (#80-3 at 3.) It is noted that Plaintiffs admit that "after a seizure, Tina (George) may not have been totally coherent" and that "some persons are totally unaware that they had had a seizure." (#87 at 14, 16.)

## Application of Law to Undisputed Facts

None of the LPN defendants is asserted to have failed to provide immediate medical attention during the documented seizure or the alleged seizures (## 62, 85, 86, 87).  Further, Plaintiffs' Amended Complaint and three responses do not allege or show that a serious injury occurred to Tina George during her incarceration at SCRJ (## 62, 85, 86, 87).  Plaintiffs state only that Tina George cried, "it hurts," and had "scratches/bruises on her upon her release."  (#62 at 4; #87 at 16.)

13

Accordingly, under the facts alleged in Plaintiffs' Amended Complaint and not disputed by the LPN defendants, the undersigned proposes that the presiding District Judge **FIND** that Plaintiffs have failed to demonstrate that the LPN defendants were deliberately indifferent to Plaintiff Tina George's serious medical needs which resulted in any serious harm to her.

### Qualified Immunity

When defendants in civil rights cases invoke qualified immunity, federal courts apply the qualified immunity principles set forth in <u>Saucier v. Katz</u>, 533 U.S. 194, 200-02 (2001), <u>Anderson v. Creighton</u>, 483 U.S. 635, 639-641 (1987), <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-819 (1982), and many other cases. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. at 818; <u>Taylor v. Waters</u>, 81 F.3d 429, 433 (4th Cir. 1996).

In a case in which the defense of qualified immunity is raised, the court looks to the evidence before it in the light most favorable to the plaintiff and asks, "do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier</u>, 533 U.S. at 201. If so, the next step "is to ask whether the right was clearly established." <u>Id</u>.

Based upon the allegations contained in Plaintiffs' Amended Complaint, Plaintiffs have failed to demonstrate that the LPN defendants were deliberately indifferent to Plaintiff Tina George's serious medical needs.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that defendants Sherry Queen, Michell Cutlip (formerly known as Michell Harrison), Misty Bailey (formerly known as Misty Garbin), and Aaron Meadows are entitled to qualified immunity regarding their care of Tina George while she was incarcerated at SCRJ.

### Legal Standing of David George

It is noted that David George's legal relationship or standing is not pled in the Amended Complaint.  While Plaintiffs previously pled that, at the time of the subject events, David George was Tina George's ex-husband (#28 at 15:04:56), no claim is made concerning any damages, injury, or cause of action concerning plaintiff David George.  According, the undersigned proposes that the presiding District Judge **FIND** that there is no legal basis for the inclusion of any claims for him in the Amended Complaint related to defendants Sherry Queen, Michell Cutlip (formerly known as Michell Harrison), Misty Bailey (formerly known as Misty Garbin), and Aaron Meadows.

### RECOMMENDATION

It is respectfully **RECOMMENDED** that defendants Sherry Queen,

Michell Cutlip (formerly known as Michell Harrison), Misty Bailey
(formerly known as Misty Garbin), and Aaron Meadows's Motion for
Summary Judgment(#80) be **GRANTED** and their Motion to Dismiss be
**DENIED** as moot.

The parties are hereby notified that this Proposed Findings
and Recommendation is hereby **FILED**, and a copy will be submitted to
the Honorable John T. Copenhaver, Jr., United States District
Judge.  Pursuant to the provisions of Title 28, United States Code,
Section 636(B)(1)(B), and Rule 6(e) and 72(b), Federal Rules of
Civil Procedure, the parties shall have ten days (filing of
objections) and three days (mailing/service) from the date of
filing of this Proposed Findings and Recommendation within which to
file with the Clerk specific written objections identifying the
portions of the Proposed Findings and Recommendation to which
objection is made and the basis of such objection.  Extension of
this time period may be granted for good cause.

Failure to file written objections as set forth above shall
constitute a waiver of *de novo* review by the District Court and a
waiver of appellate review by the Circuit Court of Appeals.  Snyder
v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474
U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir.
1985); United States v. Schonce, 727 F.2d 91, 94 (4th Cir. 1984).
Copies of such objections shall be served on opposing parties,
Judge Copenhaver, and this Magistrate Judge.

16

The Clerk is hereby directed to mail a copy of this Proposed

Findings and Recommendation to Plaintiffs, who are acting *pro se*,

and counsel of record.

ENTER: November 9, 2009

_____
Mary E. Stanley
United States Magistrate Judge

17