IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


DAVID A. GEORGE and
TINA N. GEORGE,

      Plaintiffs,

v.                               Case No. 2:08-cv-00141

KANAWHA COUNTY SHERIFF'S DEPARTMENT,
SHERIFF MIKE RUTHERFORD, OFFICER
J. M. VERNON, OFFICER DICK COLL,

      Defendants.


## PROPOSED FINDINGS AND RECOMMENDATIONS

This civil action was filed on March 3, 2008. The Plaintiffs demand damages for harms allegedly caused by the Defendants' unlawful acts, which allegedly took place at their home on September 17, 2007, and at other locations and dates.

The Plaintiffs filed the pending "Dispositive Motion," which is being construed as a motion for summary judgment, on March 4, 2010 (#125). Defendants Kanawha County Sheriff's Department ("KCSD"), Sheriff Mike Rutherford ("Sheriff Rutherford"), and Deputy J. M. Vernon ("Deputy Vernon") responded (#131) on March 22, 2010,[1] to which the Plaintiffs replied on April 1, 2010 (#134). Defendant Humane Officer Dick Coll ("Officer Coll") responded in

_____

[1]  This filing also included a motion to strike plaintiffs' Dispositive Motion. However, the undersigned denied this motion on October 14, 2010. See Docket #144.

opposition (#132) to the Plaintiffs' Dispositive Motion on March 22, 2010, but did not file a Motion for Summary Judgment of his own.  The Plaintiffs replied to Officer Coll (#135) on April 1, 2010.  In their response, the Plaintiffs state, in part, that the Affidavit of Officer Coll was dated March 22, 2010, approximately five and one-half weeks after the close of discovery on February 12, 2010.  (#135 at 1).

Defendants KCSD, Sheriff Rutherford, and Deputy Vernon have also pending their Motion for Summary Judgment (#127) and Memorandum (#128) in support, which were filed on March 5, 2010.  The Plaintiffs responded (#130) on March 19, 2010, noting, in part, that the Affidavit of Deputy Vernon was dated February 26, 2010, fourteen days after the close of discovery on February 12, 2010.  (#130 at 1).[2]  The Plaintiffs also provided additional documentation on April 8, 2010, and May 20, 2010 (##137 & 138).  On November 22, 2010, they also filed a document outlining their objections to certain testimony from the Defendants at the evidentiary hearing (#149).

Upon review of these documents, and in light of the Plaintiffs' limited litigation expertise, the court determined that an evidentiary hearing was necessary to determine whether there are

---

[2] The undersigned notes these concerns of the Plaintiffs.  However, affidavits submitted for the purpose of summary judgment are not considered discovery; therefore, the affidavits in question were timely submitted by the Defendants.

2

genuine issues of material fact.  Accordingly, the court conducted an evidentiary hearing on Wednesday, October 13, 2010, with all parties present in person except for Tina George.  Upon review of the parties' briefing and the testimony adduced at the hearing, the pending motions are now ripe for review.

## I. RELEVANT FACTS AND ALLEGATIONS

### A. The Plaintiffs' Complaint

The Plaintiffs' Complaint alleges that, at approximately 11:30 a.m. on September 17, 2007, Tina N. George was at the residence that she shares with her ex-husband, David A. George, located at 561 Campbells Creek Drive, Charleston, West Virginia.  At that time, Officer Coll, a representative of the Kanawha County Humane Association ("KCHA"), arrived at the residence and complained that Plaintiff's dog, a Chihuahua named "Baby," was chained outside without a doghouse.  (Complaint, #1, at 7).  Tina George alleges that she informed Officer Coll that the dog is an inside dog and that no outside doghouse was necessary.  She states that this was the second time Officer Coll had visited regarding the alleged animal cruelty.  Tina George was not cited either time for animal cruelty.  Id.

At approximately 12:00 p.m., Tina George called the Kanawha County 911 service to report that Coll was harassing her.  Id. Shortly thereafter, Deputy Vernon of the KCSD arrived at the residence.  Tina George alleges that Officer Coll remained at the

3

residence, which contributed to her "agitated state." Id., at 2-3. Deputy Vernon handcuffed her after her agitation persisted. As Deputy Vernon was placing her in the backseat of the cruiser, Tina George "head-butted" the door, leaving a dent in the driver's side rear door, which buckled the paint. Id., at 3-4. Tina George continued to curse and scream, now directing her attention to Deputy Vernon. Id., at 4. The Plaintiffs allege that after she was arrested, Officer Coll illegally entered the house without permission and took the dog. Id., at 8.

Tina George made her initial appearance on September 17, 2007. Bond of $250.00 was set; David George posted the bond on September 18, 2007, and Tina George was released. She was notified to appear on December 5, 2007 for a bench trial. Deputy Vernon did not appear and the charges were dismissed.

It appears that David George was not present during the September 17, 2007 incident. However, the Plaintiffs allege that on October 10, 2007, Deputy Vernon wrongfully cited David George for driving on an invalid license and, during the traffic stop, left his cruiser's flashing lights on, although he knew that Tina George had a seizure disorder which may be triggered by flashing lights. Id. at 5-6.

That Plaintiffs further allege that on February 27, 2008, Deputy Vernon conducted a traffic stop of a vehicle driven by David George, wherein Tina George was a passenger. During the traffic

stop, Deputy Vernon again left his cruiser's flashing lights on, and cited David George for a stop sign violation and for failure to change address on a driver's licence.  (#1-2 at 30-33).

David George wrote five letters to "Kanawha County Sheriff" dated September 22, 2007, September 30, 2007, October 13, 2007, October 28, 2007, and February 28, 2008 regarding the incidents and alleging that Deputy Vernon was "intentionally and maliciously harassing both my ex and myself."  Id. at 1-33, 31.  These letters were attached to the Plaintiffs' Complaint filed on March 3, 2008 (#1, 1-2).

On April 10, 2008, Deputy Vernon re-filed the charges against Tina George, which were identical to the September 17, 2007 charges.  State v. George, Case Nos. 08M5298 and 08M5299.  It is not clear whether a warrant was issued for Tina George's arrest. Trial was set for October 27, 2008.  Once again, no officer appeared and the charges were dismissed.

B. Facts Adduced at the October 13, 2010, Evidentiary Hearing

As noted earlier, the undersigned determined that an evidentiary hearing was necessary to determine whether there are genuine issues of material fact in this case, and held such a hearing on Wednesday, October 13, 2010.  While Tina George was unable to attend, David George, Sheriff Rutherford, Deputy Vernon, and Officer Coll were present and detailed their differing accounts of the events that led to this case.

On September 11, 2007, Officer Coll responded to a complaint from one of the George's neighbors that their dogs, the Chihuahua named "Baby" and a beagle puppy, did not have proper shelter. (#147 (hereinafter "Tr.") at 11). At the time he arrived, Officer Coll stated that both dogs were outside in the pouring rain without shelter. (Tr. at 14). Officer Coll informed Tina George of the requirements of West Virginia law, and also stated that he would return in a week to check whether the Georges had brought things up to code. (Tr. at 14 & 16). Officer Coll testified at the hearing that it was on this date when he had a telephone conversation with David George to inform him, too, about animal shelter legal requirements; David George requested that a copy of the animal shelter law be mailed to him. He noted that Tina George dialed the phone for him, and that he was unaware that David George also resided at the house. (Tr. at 14 &15). David George disputes the timing of the phone call, which he testifies was made on September 17, 2007. (Tr. at 31-32). He also stated that he was unaware of the September 11th visit until "a later time." (Tr. at 15).

Officer Coll returned to the George's residence on September 17, 2007, and he stated at the hearing that there was still no shelter. (Tr. at 16). Officer Coll further stated that when he asked Tina George when he could expect for her to obtain a shelter

for Baby,[3] she informed him that Baby was an inside dog and that
she had a little carrying box with louvers on the side.  (Tr. at
18).  Tina George became belligerent, and Officer Coll stated that
it was probably fifteen minutes before Tina George called 911 from
the front yard, upon which he separated himself from her and waited
for Deputy Vernon in front of his truck.  (Tr. at 17 & 19).

Deputy Vernon had previously made contact with the Georges,
perhaps as much as a year prior, when he apparently pulled them
over and warned David George that he needed to get a West Virginia
driver's license and vehicle registration.  (Tr. at 21).  When
Deputy Vernon arrived at the George residence on September 17,
2007, he found Officer Coll waiting by or in his truck and Tina
George outside in the yard.  Vernon states that Tina George had a
phone in her hand and was "just irate . . . . [and] was just
screaming and carrying on."  Id.  Deputy Vernon stated that as he
needed to determine what was going on, he attempted to separate
Officer Coll and Tina George and initially tried to get information
from the latter.  (Tr. at 22).  Deputy Vernon became aware that the
query under discussion was whether Baby was an inside dog, and he
stated that while he tried to converse with Officer Coll, who
remained calm, Tina George continued to yell, scream, and interrupt
them, also stating that she had a shelter.  (Tr. at 23).

---

[3]  The beagle puppy was no longer a resident of the George
household at that time.

The parties diverge on what happened next.  Deputy Vernon and Coll state that a still upset Tina George, by her own consent, took them into the house to show them the shelter/carrier that she had for the dog.  (Tr. at 23), while Tina George testified at deposition that she only took Officer Coll and Deputy Vernon onto the porch/threshold of the house to point out to them a travel case that was inside the house, and that they never entered at house at any time.  (See, e.g., #145, ex. 5, at 64-65).  Deputy Vernon testified that Tina George kept "escalating and escalating" things (Tr. at 23) and screaming (Tr. at 24).  Vernon states that he warned her at least three times that he would have to detain her if she didn't calm down.  After Tina George swung her finger and hands near his face, Vernon placed her in handcuffs and removed her from the house, during which she remained very emotional; Vernon described her as "screaming and hollering and pulling away from my arm."  (Tr. at 27).  He testified that arresting her for obstruction of an officer was appropriate because she was obstructing him

> from calming the situation down to try to keep Mr. Coll safe, as well as her own [safety].  She refused to follow any orders, for lack of better words, to calm down . . . That's all it was, a simple request, "Ma'am, calm down for me," I mean, language like that.  Like I said, it was just such abnormal, erratic behavior; I mean, it's not an everyday basis you see that.  I mean, it was just out of control, for lack of a better word . . . . When I went to initially restrain her, she pulled away from me.  You know, as I tried to, you know, get her arm in restraint she eventually pulled away from me, and I was able to regain control of her hands to restrain her, so that is

well documented as also part  of the obstructing[.]
(Tr. at 72).  Vernon  also testified that Tina George obstructed
his investigation.  He stated that he "couldn't figure out what was
going on with the initial harassment or involvement.  I couldn't
figure out anything. I  mean, due to her behavior, both verbally
and physically, I couldn't figure out what was going on.  She
totally obstructed my investigation to figure out the facts of what
the allegations were on the scene."  (Tr. at 73-74).  Tina George
testified at her deposition that she was arrested in the driveway
of her house.  (#145, ex. 5, at 71).  As Vernon unlocked the door
to his police cruiser, Tina George then headbutted the vehicle,
thus damaging it.  (Tr. at 29).

With Tina George handcuffed inside the house, Officer Coll
testified that he then picked up Baby, followed George and Coll out
of the house, and put Baby in his truck after securing the house.
He testified that he did not leave the house and then come back in
to get the dog after Tina George was arrested.  (Tr. at 30- 31
&81).  Despite the fact that he had previously spoken with David
George, who had requested that the applicable statute be sent to
him at the house, Officer Coll testified that he was unaware that
David George also lived there, and that he, Coll, did not know who
would care for the dog if it were not seized.  (Tr. at 81).  Tina
George, however, testified at deposition that while she was being
handcuffed in the driveway, Officer Coll went into the house, came

9

out with Baby, and put the dog in his truck. (#145, ex. 5, at 83-84). According to her, Deputy Vernon had instructed Coll to retrieve the dog. Id. at 85. Deputy Vernon, however, testified at the evidentiary hearing that he had no knowledge about the dog, as he "was too busy watching [Tina George] and taking care of other things to watch the dog." (Tr. at 78).

David George testified that he arrived home from work around a quarter after one in the afternoon, and found out from a neighbor at approximately 2 p.m. that Tina had been arrested. David George picked her up at the county jail the following day, and picked up Baby as well.

On September 22, 2007, Tina George sent a letter written by David George to the KCSD complaining about the events of the 17th. Sheriff Rutherford testified that he eventually received it, and referred it to the Department's law enforcement division as well as its attorney. (Tr. at 39-40). Before the KCSD had responded, it then received a second letter that had been mailed by David George on September 30th; this letter was also referred to the Department's attorney. Then, on October 10, 2007, Deputy Vernon pulled over David George for his out-of state registration and license. Deputy Vernon testified at the hearing that he was unaware of the Georges' correspondence to the KCSD at the time od the stop . (Tr. at 42). David George accordingly sent a letter on October 13, 2007, to the KCSD, complaining that this traffic stop

was in retaliation for his earlier letters, and that the police cruiser's strobe lights were left on despite Tina George's seizure condition.  However, at the evidentiary hearing David George did not testify as to any direct indication from Deputy Vernon to him that the stop was indeed retaliatory (Tr. at 45).  Sheriff Rutherford also testified that he was unaware of any conversations that John Rutherford, the KCSD's chief deputy for law enforcement, the KCSD's attorney, or that anybody else may have had with Deputy Vernon about the letters.  (Tr. at 45-47).  On October 28th, the Georges sent their fourth letter to the KCSD; Sheriff Rutherford recalled sending it to the KCSD's attorney, but could not remember whether the letter was sent to anybody else.  (Tr. at 47-48). Deputy Vernon testified that Sheriff Rutherford mentioned the letters to him once "in passing" (Tr. at 52), but that he didn't remember when that conversation had taken place, and that it may have taken place after the traffic stops.  Id.

Tina George's trial for obstruction of an officer and property damage had been scheduled for December 7, 2007.  However, Deputy Vernon failed to appear, and the charges were dismissed.  According to Deputy Vernon, he did not appear due to not having received a proper subpoena.  (Tr. at 56).  On February 27, 2008, Deputy Vernon pulled over David and Tina George once again.  He cited David George for an alleged stop sign violation, which David George contests (Tr. at 49), as well as David George's continued failure

to update his driver's license and registration to West Virginia. Deputy Vernon stated that the conversation between him and David George only regarded the citation.   (Tr. at 51).   The next day, February 28, David George sent another letter to the KCSD, again complaining about retaliation by Deputy Vernon and the latter's use of the police cruiser's strobe lights during the stop. However, Sheriff Rutherford testified that he never received this letter, and that he only heard about the February 27 traffic stop until shortly before the evidentiary hearing in this case.   (Tr. at 53).   He also noted that, in his thirty-eight years as a police officer, he had never heard of police strobe lights instigating a seizure, and that it was KCSD policy to use cruiser strobe lights during traffic stops (Tr. at 54).   David George also testified that Tina George did not have any seizures directly after either stop by Deputy Vernon.

On March 3, 2008, the Georges filed the instant civil action. A month later, on April 10, 2008, Deputy Vernon refiled the charges against Tina George that had arisen from the September 17, 2007, incident at her home and that were dismissed on December 7, 2007, due to Deputy Vernon's failure to appear; according to Deputy Vernon, he learned from the KCSD's attorneys about the dismissal shortly before he refiled the charges.   (Tr. 56).   He also stipulated that he re-filed the charges after the instant civil suit was filed, and after he was made aware of it.   (Tr. at 57).

12

While he admitted that the timing looks bad, id., Deputy Vernon testified that the charges were "absolutely not" refiled because he was mad at Tina George for suing him.  Id.  He further testified that the last thing that he wanted to do was arrest Tina George, and that he has declined to pull over the Georges on other occasions.  (Tr. 58).  He testified that he was advised by counsel to refile the charges, id., and that he believed in good faith at the time of the refiling that Tina George had committed the offenses in question.  (Tr. at 84).

On April 15, 2008, the February 27, 2008 traffic citations against David George were dismissed.  Deputy Vernon testified that he was never given notice of the hearing that day, (Tr. at 60), while David George testified that Deputy Vernon had been present and had instructed the magistrate to dismiss the citations.  (Tr. at 61-62).  A bench trial on Tina George's refiled charges  had been scheduled for October 27, 2008.  However, the trial was first continued to November 6, 2008, and then the charges were dismissed, after Deputy Vernon failed to show on either date.  Deputy Vernon testified that both absences were, again, due to the fact that he had not been notified about either date.  (Tr. at 64).  Sheriff Rutherford affirmed that this is a problem that has beset numerous law enforcement agencies in the area, and not just his.  (Tr. at 64-65).

Rutherford also testified that, in his tenure as Sheriff,

there have only been "one or two minor complaints" against Deputy Vernon, as well as "one possible excessive force complaint" that would have been brought three or four years ago. (Tr. at 66). He also stated that there have been no other lawsuits filed against Vernon; no disciplinary action has been taken against Vernon; the chief deputy for law enforcement has never come to him with concerns that Vernon was engaging in unconstitutional conduct; and that he had no knowledge or belief as to any constitutional violations by Vernon. (Tr. at 67).

## II. APPLICABLE LAW

### A. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Although the court will review all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from

which a reasonable juror could return a verdict in his [or her] favor." Anderson, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. See Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987); Ross v. Comm'ns Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985), abrogated on other grounds, 490 U.S. 228 (1989).

B. Suits Brought Under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

A local government cannot be sued under 42 U.S.C. § 1983 for injuries caused by its employees or agents unless it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that causes the injury. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

The Fourth Circuit does not employ a presumption that an individual defendant is sued only in his official capacity. Instead, the Court must consider a complaint in its totality to make this determination. Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). Here, the complaint suggests that Sheriff Rutherford was sued in his official capacity only, since there are no allegations that Sheriff Rutherford himself was either aware of the alleged unlawful conduct, or that he in any way participated therein. Instead, the allegations in the complaint relate only to the actions of Deputy Vernon and Humane Officer Dick Coll. A claim against an official in his or her official capacity simply represents another way of pleading an action against the entity of which the officer is an agent, and thus is to be treated as a suit against the entity only. Kentucky v. Graham, 105 S.Ct. 3099, 3105 (1985).

However, the Plaintiffs may be attempting to hold Sheriff Rutherford personally liable under a supervisory liability theory. The Supreme Court has recently rewritten the law of supervisory

liability.  "Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, --- U.S. ---, ---, 129 S. Ct. 1937, 1948 (2009).  Therefore, "[i]n a § 1983 suit or a <u>Bivens</u> action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct . . . .  [P]urpose rather than knowledge is required to impose <u>Bivens</u> liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities." <u>Id.</u> at 1949.  <u>See also id.</u> at 1957 (Souter, J., dissenting) (stating that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating <u>Bivens</u> supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects.").  To survive summary judgment, the Georges must therefore adduce evidence that Sheriff Rutherford himself purposely acted or failed to act in violation of the Plaintiffs' constitutional rights, not merely that Deputy Vernon did so.  <u>See</u>

17

Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010). Under Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), a supervisor who was not personally involved in the alleged wrong doing, but who had knowledge of a subordinate's prior unconstitutional actions, may still face §1983 liability under certain conditions for constitutional injuries inflicted by a subordinate. The essential elements of a supervisory liability claim are as follows:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

When defendants in civil rights cases invoke qualified immunity, federal courts apply the qualified immunity principles set forth in Pearson v. Callahan, --- U.S. ---, ---, 129 S. Ct. 808, 818 (2009); Saucier v. Katz, 533 U.S. 194, 200-02 (2001), Anderson v. Creighton, 483 U.S. 635, 639-641 (1987), Harlow v. Fitzgerald, 457 U.S. 800, 817-819 (1982), and many other cases. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818; Taylor v. Waters, 81 F.3d 429, 433

18

(4th Cir. 1996).

In a case in which the defense of qualified immunity is raised, the court looks to the evidence before it in the light most favorable to the plaintiff and asks whether the facts alleged show the officer's conduct violated a constitutional right, and whether the right was clearly established.  Saucier, 533 U.S. at 201.  It is up to the sound discretion of judges to decide which of these two questions should be addressed first.  Pearson, 129 S. Ct. at 818.

*C. Search and Seizure*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "At the very core" of this guarantee "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961). Indeed, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. U.S. Dist. Ct., 407 U.S. 297, 313 (1972). Thus, "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980) (internal quotation marks omitted).

*D. Probable Cause for Arrest*

19

The Fourth Amendment requires probable cause for an arrest. Probable cause under the Fourth Amendment "means 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979)). The charging statute applicable to the obstruction charges filed against Tina George is relevant to determining whether there was probable cause for her arrest. West Virginia Code § 61-5-17(a) provides that "[a]ny person who by threats, menaces, acts or otherwise, forcibly or illegally hinders or obstructs, or attempts to hinder or obstruct, any law-enforcement officer . . . [shall be guilty of an offense against the State]."

*E. Malicious Prosecution / Retaliation*

To maintain an action for malicious prosecution it is essential to prove (1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff." Syl. Pt. 1, Lyons v. Davy-Pocahontas Co., 75 W. Va. 739, 84 S.E. 744 (1915). "The term malicious is defined as '[s]ubstantially certain to cause injury' and 'without just cause or excuse' . . . . This definition implies

20

an improper or evil intent or motive or the intent to do harm."
Clark v. Druckman, 218 W. Va. 427, 433-34, 624 S.E.2d 864, 870-71
(W. Va. 2005) (internal citations omitted). "[R]etaliatory
prosecution is an actionable form of malicious prosecution."
Jarvis v. West Virginia State Police, --- W. Va. ---, ---, ---
S.E.2d ---, ---, 2010 Westlaw 4730972, 2010 W. Va. Lexis 139
(November 18, 2010). "A plaintiff who brings a cause of action
alleging that he or she was criminally prosecuted in retaliation
for exercising a right protected by the state or federal
constitution must plead and prove as an element of the cause of
action that there was an absence of probable cause to support the
criminal prosecution." Id. at Syl. Pt. 4.

### III. ARGUMENT AND DISCUSSION

*A. The Plaintiffs' Claim Against the KCSD*

The Plaintiffs argue that the KCSD had knowledge of and failed
to respond to the Plaintiff's complaints regarding the September
17, 2007 arrest and alleged retaliatory traffic stops on October
10, 2007 and February 27, 2008 by Deputy Vernon subsequent to that
arrest. This knowledge arose from five letters sent to the KCSD by
the Plaintiffs regarding the initial arrest and the subsequent
traffic stops by Deputy Vernon. (#1-2, p. 1-33). The Plaintiffs
argue that [h]aving knowledge and did [sic] absolutely nothing,
makes Sheriff Rutherford a conspirator, after the facts." (#130 at
17). The Plaintiffs further state:

21

Had Sheriff Rutherford personally inquired as to complaints filed against Officer Vernon, and properly investigated, Sheriff Rutherford could have possibly prevented the traffic stops of 10-10-07 and 2-27-08, of which were unlawfully done. Plaintiffs have filed 5 separate complaints against Officer Vernon, before Plaintiffs filed civil actions in the Federal Court...

Responses by Sheriff Rutherford and/or legal counsels validates that Sheriff Rutherford did have ongoing knowledge of Officer Vernon and/or Officer Coll's illegal actions, and still, to date, to Plaintiffs knowledge has done absolutely nothing, period...

Plaintiffs repeat, if legal counsels and Sheriff Rutherford have actually read all five complaints filed against Officers Vernon and Coll, it demonstrates a pattern of criminal acts/intents...

Obviously, Sheriff Rutherford was aware of Officers Vernon and Cols unlawful actions, by fact that he contacted Law Firm of Bowles & Rice. All 5 complaints filed against Officer Vernon, obviously, provide proofs to a pattern of constitutional violations, criminal offenses, conspiracies between Vernon and Coll to defraud plaintiffs... Plaintiffs have shown proofs to 3 separate distinct instances.

(#130 at 19-20). Additionally:

Plaintiffs had filed 2 complaints against Officer Vernon, 9-22-07 and 9-30-07, even before the traffic stop of 10-10-07. A third complaint was filed dated 10-13-07, pertaining to the traffic stop of 10-10-07. A fourth complaint was filed dated 10-28-07. A fifth complaint was filed dated 2-28-08 pertaining to the traffic stop of 2-27-08. Plaintiffs have presented a pattern of complaints/concerns/issues. To validate, that had Sheriff Rutherford taken some form(s) of actions against Officer Vernon may have prevented one, or both traffic stops...(which were) not lawfully done. In that Officer Vernon wanted to check my drivers license and registration of vehicle and submit fabricated charges within citations in which to attempt to obtain money for the county, under totally fraudulent pretenses. Thus, violating U. S. Constitution 4th Amendment strongly indicating that Officer Vernon would have reasons in which to retaliate against Plaintiffs.

22

(#130 at 22).

KCSD asserts, however, that the Plaintiffs have no evidence that any purported constitutional deprivation resulted from a KCSD policy or custom, therefore, the complaint fails to state a claim against KCSD. (#128 at 7-8). It further argues that the underlying traffic stops were effectuated based upon probable cause, that is, various criminal statute violations. KCSD states that the Plaintiffs concede that David George was in violation of several statutes requiring an operator to register his vehicle in West Virginia if he is a West Virginia resident and obtaining a West Virginia license: David George did not change his driver's license address to West Virginia from Tennessee despite living in West Virginia for years prior and he failed to obtain a valid West Virginia operator's license. Also, the KCSD notes that Deputy Vernon stated that the second stop was also effectuated due to David George's failure to stop at a stop sign. It therefore argues that these circumstances give rise to probable cause for both traffic stops. Accordingly, KCSD asserts it is entitled to summary judgment as a matter of law. (#128 at 8-9).

The undersigned proposes that the presiding district judge **FIND** that the Plaintiffs have not shown that a genuine issue of material fact exists as to their claims against the KCSD. As required by <u>Monell</u>, the Plaintiffs have not presented any evidence that an official policy or custom of the KCSD led to their alleged

injuries.  The Plaintiffs arguments are merely speculative and are not sufficient to survive summary judgment.  Accordingly, the Defendants' motion for summary judgment as to the KCSD should be granted.

*B. The Plaintiffs' Claim Against Sheriff Mike Rutherford*

The Plaintiffs assert that Sheriff Mike Rutherford had knowledge of and failed to respond to Plaintiff's complaints regarding the September 2007 arrest and alleged retaliatory traffic stops subsequent to that arrest on October 10, 2007 and February 27, 2008.  This knowledge arose from five letters sent to the KCSD by the Plaintiffs regarding the initial arrest and the subsequent traffic stops by Deputy Vernon.  (#1-2, p. 1-33).  The Plaintiffs argue that [h]aving knowledge and did [sic] absolutely nothing, makes Sheriff Rutherford a conspirator, after the facts." (#130 at 17).  The Plaintiffs state that the complaints were "not responded to, nor disputed, in a timely manner, in any way."  (#125 at 16-18).  The Plaintiffs further state:

> Had Sheriff Rutherford personally inquired as to complaints filed against Officer Vernon, and properly investigated, Sheriff Rutherford could have possibly prevented the traffic stops of 10-10-07 and 2-27-08, of which were unlawfully done.  Plaintiffs have filed 5 separate complaints against Officer Vernon, before Plaintiffs filed civil actions in the Federal Court...

> Responses by Sheriff Rutherford and/or legal counsels validates that Sheriff Rutherford did have ongoing knowledge of Officer Vernon and/or Officer Coll's illegal actions, and still, to date, to Plaintiffs knowledge has done absolutely nothing, period...

24

> Plaintiffs repeat, if legal counsels and Sheriff Rutherford have actually read all five complaints filed against Officers Vernon and Coll, it demonstrates a pattern of criminal acts/intents...
>
> Obviously, Sheriff Rutherford was aware of Officers Vernon and Cols unlawful actions, by fact that he contacted Law Firm of Bowles & Rice. All 5 complaints filed against Officer Vernon, obviously, provide proofs to a pattern of constitutional violations, criminal offenses, conspiracies between Vernon and Coll to defraud plaintiffs... Plaintiffs have shown proofs to 3 separate distinct instances.

(#130 at 19-20).

> Plaintiffs had filed 2 complaints against Officer Vernon, 9-22-07 and 9-30-07, even before the traffic stop of 10-10-07. A third complaint was filed dated 10-13-07, pertaining to the traffic stop of 10-10-07. A fourth complaint was filed dated 10-28-07. A fifth complaint was filed dated 2-28-08 pertaining to the traffic stop of 2-27-08. Plaintiffs have presented a pattern of complaints/concerns/issues. To validate, that had Sheriff Rutherford taken some form(s) of actions against Officer Vernon may have prevented one, or both traffic stops...(which were) not lawfully done. In that Officer Vernon wanted to check my drivers license and registration of vehicle and submit fabricated charges within citations in which to attempt to obtain money for the county, under totally fraudulent pretenses. Thus, violating U. S. Constitution 4th Amendment strongly indicating that Officer Vernon would have reasons in which to retaliate against Plaintiffs.

(#130 at 22).

Defendant Sheriff Mike Rutherford asserts that the claim against him is properly considered as a claim against the KCSD. Consequently, for the reasons relating to the dismissal of the KCSD, he argues that the claim against him in his official capacity likewise fails as a matter of law. (#128 at 9).. Further, it is asserted that there is no evidence that Sheriff Rutherford had any

personal knowledge of Vernon's subsequent traffic stops.  Even if he did have such knowledge, however, Sheriff Rutherford states that his actions did not violate any federal right.

Sheriff Rutherford also argues that the Plaintiffs' complaint fails to allege the necessary elements of supervisory liability theory.  (#128 at 9-10).  First, he states that the Plaintiffs rely entirely upon a series of five letters they purportedly "sent to Sheriff Rutherford."  These five letters were attached to the Plaintiffs' complaint.  Four of the letters are addressed to "To whom it may concern."  The other letter (dated September 30, 2007) does not include a salutation.  These letters are inadequate to establish a supervisory liability claim because, he says, in order to establish a supervisor's knowledge of a pervasive risk, a plaintiff must allege that the supervisor was aware of his subordinate's "widespread" constitutional violations occurring "on several different occasions."  <u>Shaw</u>, supra at 799 (Stating that "ordinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents" to establish supervisory liability.).  Secondly, he states that the Plaintiffs have failed to allege an "affirmative causal link" between their claimed constitutional injuries and his alleged failure to take corrective action against Deputy Vernon because each of the five letters were sent only after Deputy Vernon's September 17, 2007 run-in with Tina George.  Moreover, to the extent that the Court

may find that the pleadings make such allegations, he argues that Deputy Vernon's conduct that serves as the basis of that correspondence was not "wrongful."

Finally, to the extent that the Plaintiffs are claiming that Sheriff Rutherford failed to protect them from future retaliatory conduct by Vernon, he asserts that Vernon's subsequent traffic stops were legal and based on probable cause. Accordingly, he argues that such claims against him fail as a matter of law. (#1, #128 at 11-12).

The undersigned proposes that the presiding district judge **FIND** that the Plaintiffs have not shown that a genuine issue of material fact exists as to their official capacity claims against Sheriff Rutherford. Any claims against him in his official capacity fail as such claims are, as noted earlier, merely claims against the KCSD.

Further, claims by the Plaintiffs against Sheriff Rutherford in his personal capacity fail as well. Even when taking into consideration the inferences that they are due on summary judgment, the Plaintiffs have not shown that a genuine issue of material fact exists as to whether Sheriff Rutherford violated the Constitution through his own actions, or that he acted with the requisite forbidden purpose. See Iqbal, supra. Moreover, the Plaintiffs have also not met the supervisory liability requirements of Shaw. The undersigned notes that testimony adduced at the evidentiary

27

hearing indicated that Sheriff Rutherford was aware of some of the Plaintiff's various letters, even though none of them were specifically addressed to Sheriff Rutherford himself. However, the Plaintiffs have failed to show a genuine issue of material fact that there is an "affirmative causal link" between their alleged injuries and Sheriff Rutherford's alleged failure to take corrective action against Deputy Vernon. The Plaintiffs' speculation and conjecture is not sufficient to create a permissible inference. Accordingly, the Defendants' motion for summary judgment as to Sheriff Rutherford should be granted.

*C. The Plaintiffs' Claims Against Deputy Vernon*

*1. Unlawful Arrest*

The Plaintiffs assert that Deputy Vernon's arrest of Tina George for obstruction was without probable cause and thereby violated her civil rights. Tina George asserts that her verbal objections are protected by the First Amendment and that she was unreasonably seized, which violated her Fourth Amendment rights. Tina George has consistently maintained that she was "arrested outside of the house, in the driveway and the dog was inside of the house, before Officer Vernon's arrival." (#125 at 21).

Plaintiffs take issue with Officer Vernon's Affidavit, which was introduced outside of the time line for discovery:[4]

---

[4]  As noted above, affidavits are considered discovery, and the Plaintiff's concerns are therefore misplaced.

28

> Within Affidavit by Officer Vernon #5 "Tina George
> invited Officer Coll and myself into her home..."...
> There is absolutely nothing documented/indicated/
> implicated/stated, period, that Officer Vernon was ever
> in Plaintiffs residence on 9/17/07, until 12/23/09,
> nothing in statement dated 9/17/07...
>
> Within Affidavit of Officer Vernon #9 "Plaintiff Tina
> George then stepped toward me in an aggressive manner and
> pointed her finger in my face."... How is pointing ones
> finger in someone's face 1) menacing, 2) obstructing an
> officer, 3) nothing ever stated to this specific effect
> until 2-11-10, if indeed, it actually did happen.  No
> physical proof to substantiate defendant's statement.

(#130 at 1-3).

The Plaintiffs further state that in his statement from the
day of the arrest, Officer Vernon referred to Tina George as "the
suspect" when, in fact, she was the complainant who had placed the
911 call.  (#130 at 11-12).  The Plaintiffs assert that this shows
that Officer Vernon had a bias against Tina George and "validates
the officers' attitudes towards Tina" as being negative  (#130 at
12)  and that "he has already decided that Tina is guilty of
something." (#125 at 10).  The Plaintiffs further state that
"[n]othing documented by either Officer Coll and/or Officer Vernon,
as that Tina was using any forms of fighting words.  No proof by
Officer Vernon as to what constitutes and/or defines, as to what an
aggressive stance is/was, by Tina, if done." (#125 at 4).

Deputy Vernon asserts in response that his arrest of Tina
George was not for her verbal threats but was due to her menacing
and obstructive behavior.  He states that, in his professional
independent judgment, he and Officer Coll were at risk for physical

29

assault given Tina George's escalating aggressiveness, and that there was clear probable cause for her detention and arrest. (#128 at 13-15).

The undersigned proposes that the presiding district judge **FIND** that Plaintiff Tina George has shown that genuine issues of material fact exist as to her unlawful arrest claims against Deputy Vernon. First, there is the issue of where the incident with Deputy Vernon occurred. Tina George has averred from the beginning that the parties never entered her home, while Deputy Vernon and Officer Coll have made claims to the contrary and have stated that Tina George was arrested inside her house. More importantly, the undersigned will not "weigh the evidence and determine the truth" of whether Tina George's behavior constituted probable cause for the violation of West Virginia Code § 61-5-17, Anderson, 477 U.S. at 249, as her actions may or may have been constitutionally protected. See, e.g., City of Houston v. Hill, 482 U.S. 451, 461 & 463 n.12 (1987) (noting "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," but also recognizing that the "freedom verbally to challenge police action is not without limits . . . fighting words which by their very utterance inflict injury or tend to incite an immediate breach of the peace are not constitutionally protected.") (internal citations and quotations omitted). Whether or not Deputy Vernon had probable cause to arrest Tina George for

30

obstruction is a question for the jury, and summary judgment on this matter would be inappropriate.[5]

### 2. Malicious Prosecution / Retaliation

The Plaintiffs assert that Officer Vernon's arrest of Tina George for obstruction was malicious.  The Plaintiffs also allege that Deputy Vernon retaliated against her/them by stopping David George on two occasions subsequent to her initial arrest for various traffic violations, and for refiling the charges against her relating to her arrest on September 17, 2007.  (#130 at 10, 15, 22, 26, 39).  The Plaintiffs state:

> Within Malicious Prosecution (standard, it is required)...that it terminated favorably to Plaintiff. Charges against Tina were dismissed, in essence on 12-5-07, 10-27-08, 11-6-08...In that Officer Vernon intentionally submitted false and/or fabricated statements within his statement of 9-17-07, with the sole intentions of having the courts and/or prosecutors to rely on statement... (that is) malicious.

(#130 at 26).

> [Regarding] the traffic stop of 10-10-07...[Officer Vernon intentionally turned on] strobe lights [knowing that they] can induce seizure activity...There had already been two complaints filed against Officer Vernon even before this traffic stop demonstrating an intent of ill will/evil intents/maliciousness towards Plaintiffs.

(#130 at 27).(See also #125 at 15-16).

Regarding the traffic stop of February 27, 2008, the

---

[5]  However, the undersigned notes that the denting of the cruiser occurred after Tina George was arrested and placed in hand-cuffs. Accordingly, it is irrelevant to a determination of whether probable cause for the obstruction arrest existed.

Plaintiffs again assert that Officer Vernon did not have probable cause to stop them and was acting in a retaliatory manner.  Officer Vernon allegedly stopped David George for failing to stop at a stop sign:

> Plaintiffs sent legal counsels photos of stop sign and that of sign directly beneath stating 'Except When Turning Right.'  Officer Vernon personally dismissed citation of 2-27-08 on date of 4-15-08.  As well as Officer Vernon tore citation at number and submitted an entirely different number on side.  Thus, nothing within Plaintiffs complaint of 2-28-08 was disposed within a timely manner.  Thus legal counsel, as well as Officer Vernon, personally knew, for fact, that he altered citation number, and submitted false charge of "stop sign violation" providing absolute proofs that citations written by Officer Vernon were indeed maliciously done. And definitely can be construed as being retaliatory towards Plaintiffs.

(#130 at 29-30). (See also #125 at 17-18).

Regarding the refiling of charges against Tina George, the Plaintiffs assert that it was retaliation/malicious prosecution because there were no new facts to justify refiling the charges which were legally dismissed on December 5, 2007 and that Officer Vernon failed to discuss his reasoning for refiling the charges against Tina George in his affidavit (presumably the Plaintiffs are asserting that this is an admission of guilt).  (#130 at 39-41). Specifically, the Plaintiffs state:

> Charges against Tina were legally dismissed on 12-5-07... Charges against Tina were again legally dismissed on 10-27-08.  Charges against Tina were again legally dismissed on 11-6-08 in that neither Officers Vernon nor Coll were present for any/all 3 court dates.  Thus, Tina was provingly (sic) illegally arrested.  As well as, by refiling charges against Tina on 4-10-08 was indeed an

attempt to maliciously prosecute her for same already dismissed charges.

(#125 at 19).

The Plaintiffs also state that Officer Vernon failed to discuss in his affidavit why he dismissed his February 27, 2008 citation against David George on April 15, 2008 (presumably the Plaintiffs are asserting that this is an admission of guilt). (#130 at 42).

With respect to the initial arrest for obstruction, Deputy Vernon asserts that his conduct was not malicious but was based on reasonable, professional judgment given Tina George's aggressive and menacing conduct.  He states that Tina George has admitted to cursing him, her menacing conduct, and her intentional damage to his cruiser.  Deputy Vernon asserts that he had probable cause to detain Plaintiff to protect officer safety, as well as to prevent her continued and repeated hindrance of his investigation. (#128 at 15).  As it relates to the subsequent traffic stops, he asserts that Tina George has no claim as it relates to these stops, as she was not the driver, nor was she harmed in any manner as a result of the stops.  Likewise, Vernon asserts that David George cannot sustain a malicious prosecution claim because Deputy Vernon's conduct was objectively reasonable because he had probable cause to believe that David George violated several West Virginia motor vehicle statutes, i.e. failing to change his driver's license from a Tennessee driver's license to a West Virginia operator's license

33

and failing to register his vehicle in West Virginia, despite residing in West Virginia for years prior to these traffic stops (§17B-2-13), failing to have a valid operator's license (§17B-2-2), and failure to properly stop at a stop sign (§17C-12-5). (#128 at 15-16, 24-26). Vernon states that he engaged his emergency lights for public safety as required by West Virginia Code §17C-2-5. Vernon concludes that he "relied on his independent professional judgment in determining that he had sufficient probable cause to stop the subject vehicle . . . . Accordingly, Vernon is entitled to qualified immunity." (#128 at 25-26).

The undersigned proposes that the presiding district judge **FIND** that the Plaintiffs have shown that genuine issues of material fact exist as to part of their malicious prosecution and retaliation claims against Deputy Vernon. First, with regards to the malicious prosecution claim, the undersigned has already proposed that the presiding judge find that whether Deputy Vernon had probable cause for the arrest of Tina George is a question for the jury. Moreover, there is a genuine issue of material fact as to whether Deputy Vernon had probable cause for the two traffic stops of David George. First, as to the February 27, 2008, traffic stop, David George has demonstrated a question of fact as to the stop sign violation. Moreover, given the inferences that the Plaintiffs are due on summary judgment, there is a broader question of fact as to probable cause, given that the two traffic stops

34

occurred after the Plaintiffs sent their letters to the KCSD complaining about Deputy Vernon, and that Deputy Vernon refiled the charges against Tina George after being sued by her.  The Court should not "weigh the evidence and determine the truth" of whether Deputy Vernon was acting out of probable cause or, instead,  with a malicious or retaliatory intent.  <u>Anderson</u>, 477 U.S. at 249. Therefore, summary judgment would be inappropriate.

However, the undersigned proposes that the presiding judge **FIND** that there are no genuine issues of material fact as to Deputy Vernon's use of the strobe lights on his police car.  The Plaintiffs have not produced even a scintilla of evidence that Deputy Vernon used the strobe lights with the intent of harming Tina George.  Rather, all the evidence available to the court suggests that he was merely following KCSD policy, and even David George admitted that the strobe lights did not cause his ex-wife to have a seizure.  Accordingly, Deputy Vernon's motion for summary judgment on this issue should be granted.

### 3. *Illegal Seizure of Property*

The Plaintiffs allege that Deputy Vernon and Humane Officer Coll conspired to "illegally" take the dog in violation of her federal property rights under the due process clause of the Fourteenth Amendment and that she was protected against unreasonable searches and seizures under the Fourth Amendment. Tina George has consistently maintained that she was "arrested

outside of the house, in the driveway and the dog was inside of the house, before Officer Vernon's arrival." (#125 at 21).   Plaintiffs further state: "Neither Plaintiff gave Officer Coll nor Officer Vernon permission in which to physically enter residence at any time on 9-17-07." (#125 at 3).   The Plaintiffs state: "Upon Tina's arrest, Officer Vernon advised Officer Coll to enter Plaintiffs' residence to take dog on 9-17-07."   (#125 at 11).

The Plaintiffs also argue

[i]n that Tina was arrested outside of house in driveway,
Officer Vernon did not request a warrant for
search/seizure to be done inside of residence to obtain
dog.   Officer Coll did not request a warrant for
search/seizure to be done inside of residence to obtain
dog...

Officer Coll entered residence in which to obtain dog in
Officer Vernon's presence.  Officer Coll exited residence
with dog in Officer Vernon's presence.   Search and/or
seizure of the dog was not incident to Tina's arrest,
thus, a warrant was mandatory by Officer Coll in which to
enter residence and/or seizure of the dog.

(#125 at 13-14).

The Plaintiffs further assert:

[t]here are numerous discrepancies within statements of
Officer Coll dated 10-5-07 and that of Officer Vernon
dated 9-17-07.   Legal Counsels failed to mention that
numerous pertinent/relevant and material points/facts
were withheld from 1) Officer Vernon's statement of 9-17-
07, 2) Officer Vernon's Affidavit of 2-26-10, 3) Officer
Coll's statement of 10-5-07, 4) Officer Colls Affidavit
of 3-22-10, 5) As well as their own statements do not
consistently coordinate with their own affidavits...

Defendant clients have intentionally perjured themselves.
Defendant legal counsels have intentionally perjured
themselves.

36

(#135 at 13-15).

The Plaintiffs state "Legal Counsel David Nelson documented within response dated 12-23-09 #9 'When Deputy Vernon last took note of the animal, it was still chained and on the front porch of the Plaintiffs home.'  Statements by legal counsel David Nelson totally contradict each other, and from within the very same document."  (#125 at 25).

Deputy Vernon asserts in his defense that Officer Coll was statutorily authorized to remove the dog from Tina George's ex-husband's home once she was taken into custody and arrested per West Virginia Code §7-10-4, which outlines the process due an owner whose animal has been taken into possession thereunder.  He further asserts that the complaint contains no allegation that this process was not followed, or that the extent of the process available is constitutionally inadequate.  (#128 at 16).

If the statute under which Humane Officer Coll acted were found to be unconstitutional, Deputy Vernon asserts that he would not be subject to liability pursuant to the doctrine of qualified immunity, since he could not reasonably have known that an activity authorized by a valid statute might later be determined unconstitutional.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)("[G]overnment officials... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.").

Deputy Vernon states that there is no allegation that he illegally entered the residence to seize the Plaintiffs' dog.  An illegal seizure requires a seizure, and he asserts that his alleged "complicity" in Coll's alleged improper seizure is insufficient to proceed on such a claim.  He claims that the Plaintiffs never alleged that he himself unlawfully entered the residence to seize the dog.  To the contrary, at the time the dog was seized by Coll, Deputy Vernon states that he and Tina George were at his cruiser. (#128 at 19).

To the extent Coll's alleged wrongful conduct is being imputed to Deputy Vernon, in addressing West Virginia Code §7-10-4 (which allows the seizure "of any animal...known to be abandoned [or] neglected..."), Deputy Vernon states that the Plaintiffs do not contend that this statute provides insufficient procedural safeguards so as to run afoul of the Due Process Clause.  Instead, he states that they claim only (1) that the dog was not actually abandoned or neglected, and (2) that Officer Coll failed to strictly follow the statute's notice requirements by not providing Tina George with written notification that her dog had been seized. (#128 at 19-20).

Vernon states that the Fourth Amendment does not protect against all searches and seizures, but only against "unreasonable searches and seizures."  To the extent that the Plaintiffs intend

to assert a Fourth Amendment conspiracy claim against Deputy Vernon due to Officer Coll's entry into David George's residence to retrieve Tina George's dog, Vernon argues that Officer Coll did not act unreasonably because he was legally authorized to enter the property to fulfill his statutory obligation under West Virginia Code § 7-10-2 and § 7-10-4 of taking into possession abandoned or neglected animals.  (#128 at 22).  Further, he states that it is undisputed that he had no supervisory authority over Coll.  Thus, even if he told Coll to seize the dog, there is no official conduct by Deputy Vernon that is actionable simply by that purported instruction.  (#128 at 23).  Moreover, regardless of whether West Virginia Code § 7-10-2 might ultimately be struck down as unconstitutionally permitting warrantless searches and seizures, it was objectively reasonable at the time (given that the validity of this statute has not been called into question) for Officer Coll to enter David George's residence.  (Id).

The undersigned proposes that the presiding district judge **FIND** that the Plaintiffs have shown that genuine issues of material fact exists as to Deputy Vernon's involvement in a Fourth Amendment conspiracy claim, and, moreover, that qualified immunity is inapplicable.  While Deputy Vernon testified at the evidentiary hearing that he had no involvement with Officer Coll's removal of Baby from the George household, Tina George testified to the contrary at her deposition; there is also, of course, a dispute

over where the arrest of Tina George occurred.  Moreover, despite
Deputy Vernon's arguments, it is clearly established that there is
no canine welfare exception to the Fourth Amendment, and the claim
that a reasonable person would not have been aware that the United
States Constitution trumps West Virginia animal welfare law is
without merit, see Altman v. City of High Point, NC, 330 F.3d 194,
203 (4th Cir. 2003), as is Deputy Vernon's claim that there could
not have been an actionable conspiracy because he had no
supervisory authority over Officer Coll.  Therefore, summary
judgment on this matter would be inappropriate.

*D. The Plaintiffs' Claims Against Humane Officer Dick Coll*

The Plaintiffs claim that Humane Officer Dick Coll unlawfully
entered their residence without consent or a warrant and thereupon
unlawfully seized their dog in violation of their constitutional
rights.  Tina George has consistently maintained that she was
"arrested outside of the house, in the driveway and the dog was
inside of the house, before Officer Vernon's arrival." (#125 at
21).  The Plaintiffs further state: "[n]either Plaintiff gave
Officer Coll nor Officer Vernon permission in which to physically
enter residence at any time on 9-17-07."  (#125 at 3).  The
Plaintiffs also state that "Officer Coll had personally talked with
David over the phone, 30 minutes or so before Officer Vernon's
arrival.  That David requested W. Va. Codes be sent to the
Plaintiffs' residence [so] that by all reasonable appearances . .

40

. David also lived at residence on 9-17-07 and that Tina did not live at residence alone on 9-17-07." (#125 at 13).

The Plaintiffs also take issue with Officer Coll's Affidavit.

> Absolutely nothing stated within Affidavit as to having talked with David over the phone on 9-11-07 or 9-17-07. Within Response to Plaintiffs' Discovery #4, Officer Coll and/or legal counsels agree that Officer Coll spoke with David on 9-17-07.  Within Officer Coll's "Statement" dated 10-5-07, he states that he spoke with David over the phone on 9-11-07.  Officer Coll's Statement did not come into existence, period, to Plaintiffs' knowledge until 9-20-08... Officer Coll has absolutely no way legally in which to prove his statement that he wasn't harassing Tina.

(#135 at 1-3).

The Plaintiffs assert that because Richard Coll had spoken to David George twice, he was fully aware that David George resided in the house: "Plaintiff David George normally arrives home between 1:15 PM and 1:30 PM daily.  Thus, dog was not abandoned as implied by Coll/legal counsel.  Thus, dog would have been fed, watered, etc." (#135 at 5).  The Plaintiffs state that the "dog is an inside dog.  No outside shelter was needed/mandatory.  Nor, was it concluded that the dog was cruelly treated, and/or neglected, just by reason of being on a chain." (#135 at 6).

However, Officer  Coll has maintained throughout this case that he was statutorily authorized to remove Tina George's dog once she was taken into custody and arrested.  He asserts that he seized the dog in accordance with his duties under W. Va. Code §61-8-19, which imposes a duty on animal owners to provide their animals with

adequate shelter and sustenance; W. Va. Code §7-10-1 and §7-10-2, which impose a duty on Officer Coll to prevent the perpetration of any act of animal cruelty or neglect and W. Va. Code §7-10-3 and §7-10-4, which impose a further duty on Officer Coll to seize an animal if he believes that it has been abandoned and will thereby be denied sustenance and shelter.   Pursuant to these statutory duties imposed upon him, he asserts that he lawfully seized the dog in question upon the arrest of Tina George on September 17, 2007. He states that he has maintained throughout this case that he was inside the residence of Tina George, along with Deputy Vernon of the Kanawha County Sheriff's Department, at the request and invitation of Tina George to view various objects to offer an opinion on whether they would provide a suitable outside shelter for her dog, to determine whether Tina George was providing adequate shelter for the dog while it was outside.   As such, he maintains that he entered her home with her consent.   Officer Coll submitted his Affidavit and that of Deputy Vernon, in which both attested under oath that they did have Plaintiff Tina George's consent to enter the home on September 17, 2007 and that she was arrested in the living room of her home.   (#132 at 2-4; #132-1; #132-2).

Tina George has asserted throughout the case that she did not ever consent to entry of Officer Coll and Deputy Vernon into her residence, that they never entered her home prior to her arrest,

42

and that she was arrested outside her home in her driveway.  Tina George maintained those assertions during her deposition taken on February 11, 2010.  Counsel for Officer Coll states that given that Tina George has maintained those factual allegations throughout the pendency of this case, there is a genuine issue of material fact to be determined by the jury.  As a result, Officer Coll did not file a dispositive motion and the dispositive motion filed by the Plaintiffs must be denied.  (#132 at 3)

The undersigned proposes that the presiding district judge **FIND** that Officer Coll has shown that genuine issues of material fact exists as to the Plaintiffs allegations against him.  As Officer Coll has noted, there are genuine issues of material fact as to where the arrest of Tina George occurred.  Accordingly, the Plaintiffs' motion for summary judgment should be denied as to the seizure of the dog and Officer Coll's alleged entry into the home.  Further, as the undersigned indicated above, qualified immunity is not applicable.

*IV. RECOMMENDATION*

For the reasons stated above, it is respectfully **RECOMMENDED** that the Plaintiff's Dispositive Motion (#125) be denied, and that the Motion for Summary Judgment (#127) of Defendants KCSD, Sheriff Rutherford, and Deputy Vernon be granted in part as to the KCSD, Sheriff Rutherford, and the strobe light claims against Deputy Vernon, and denied in part as to the other claims against Deputy

43

Vernon.  The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984); <u>United States v. Brodnik</u>, 710 F. Supp.2d 526 (S.D. W. Va. 2010).  Copies of such objections shall be served on the United States Attorney, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to mail a copy of this Order to the Plaintiffs and to transmit it to counsel of record.

ENTER: December 8, 2010

Mary E. Stanley
United States Magistrate Judge