```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA

                    AT CHARLESTON


DAVID A. GEORGE and
TINA N. GEORGE,

        Plaintiffs,

v.                              Civil Action No.  2:08-0141

OFFICER J. M. VERNON and
OFFICER DICK COLL,

        Defendants
```

## MEMORANDUM OPINION AND ORDER

On March 22, 2011, a jury was selected and sworn to try the issues in this case.

I.

Plaintiff Tina N. George did not appear for trial. Her fellow plaintiff, David A. George, appeared as directed, along with the defendants and their respective counsel. Mr. George explained that Ms. George's failure to appear was based upon stress and anxiety. It is noted that Ms. George appeared and participated in the final settlement conference with the court held the day before trial, as she had done at the pretrial conference with the court two weeks earlier on March 8, 2011.

It is noted as well that Ms. George also failed to appear for the October 13, 2010, evidentiary hearing before the magistrate judge.  (<u>See</u> Trans. of Evid. Hrg. at 3 (Mr. George explaining that "[t]hey changed her medication just a couple days ago or something, and I don't know if it's because of the medication change or something, but she's been nauseous a lot and she just hasn't been as coherent as she needs to be . . . .").

As noted in the January 11, 2011, memorandum opinion and order, trial was confined to two claims:

> This case will proceed to trial solely on the warrantless entry claim against Deputy Vernon and Humane Officer Coll along with the unlawful seizure claim against Humane Officer Coll surrounding his taking of the Georges' canine.

(Memo. op. at 20).  Within the integrated pretrial order entered by the court on March 22, 2011, plaintiffs, without objection from defendants, expanded their unlawful seizure claim respecting the dog to encompass not only Humane Officer Coll but also Deputy Vernon.  The expansion was based upon the contention that Deputy Vernon "improperly directed [Humane] Officer Coll to enter their home and seize their dog . . . ."  (Integ. Pretr. Ord. at 5).  The court treats the claim as properly pled.  <u>See</u> <u>Rockwell Int'l Corp. v. United States</u>, 549 U.S. 457, 474 (2007) ("[A] final pretrial order . . . supersede[s] all prior pleadings and

2

'control[s] the subsequent course of the action.'" (citations omitted)).

As the only evidence introduced, Mr. George called two witnesses, Deputy Vernon and Humane Officer Coll. Both law enforcement officers testified that their entry into the Georges' residence on September 17, 2007, came at the uncoerced invitation of Ms. George. She asked them into the home to show them what she deemed a suitable outdoor shelter for her dog. Humane Officer Coll had previously received two anonymous complaints, on September 10 and 17, 2007, accusing Ms. George of not providing such a shelter for her canine.

Both Deputy Vernon and Humane Officer Coll additionally testified that Ms. George was placed under arrest while they and Ms. George were in her residence with the dog. Humane Officer Coll testified that he took the dog with him at the time of Ms. George's arrest, believing he was obliged to do so under state law given its involuntary abandonment. He advised Ms. George, however, that she could pick up the animal when she was released from incarceration.

At the conclusion of the evidence, both defendants moved separately for judgment as a matter of law as to each of the claims alleged against them.

3

II.

A. Governing Standard

Federal Rule of Civil Procedure 50(a)(1) provides as follows:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). Our court of appeals recently reiterated that "[j]udgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment . . . .'" DRC, Inc. v. Custer Battles, LLC, 562 F.3d 295, 305 (4th Cir. 2009)(quoting Chaudhry v. Gallerizzo, 174 F.3d 394, 405 (4th Cir. 1999) (internal quotation marks and citation omitted)).

**B.    Analysis**

                            1.    Unlawful Entry Claim

       The Fourth Amendment is central to the analysis.  It provides pertinently as follows:

> The right of the people to be secure in their . . . houses . . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .

U.S. Const. Amend. IV.  The portion of this enshrined provision of the Bill of Rights commonly referred to as the Warrant Clause is regularly enforced as written:

> We agree that not just any claimed justification will suffice to excuse a warrantless home entry, for "the right of a man to retreat into his own home and there be free from unreasonable government intrusion" is at "the very core" of Fourth Amendment protection.

<u>United States v. Taylor</u>, 624 F.3d 626, 631 (4th Cir. 2010) (citations omitted).  This has long been the case:

> By 1992, the Supreme Court had ruled that an entry into a home without a warrant is <u>per se</u> unreasonable unless an exception to the warrant requirement . . . exists.

<u>Wilson v. Layne</u>, 141 F.3d 111, 115 (4th Cir. 1998) (citing <u>Payton v. New York</u>, 445 U.S. 573, 588-90 (1980); <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 454-55 (1971) (other citations omitted)); <u>see also</u> <u>Hunsberger v. Wood</u>, 570 F.3d 546, 553 (4th

Cir. 2009) (stating "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'") (quoting United States v. U.S. Dist. Ct., 407 U.S. 297, 313 (1972)).

Equally well settled, however, is the exception to the warrant requirement relied upon by defendants in this action:

> [V]alid consent to seize and search items provides an exception to the usual warrant requirement. [T]he Government bears the burden of establishing, by a preponderance of the evidence, that it obtained valid consent to search.
>
> Consent to search is valid if it is (1) "knowing and voluntary," and (2) given by one with authority to consent . . . .

United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007) (citations omitted).

As noted, the evidence received into the record at trial is undisputed that Ms. George knowingly and voluntarily invited defendants into her home.  There is no indication that defendants exceeded the scope of the consent obtained, or acted unreasonably in any respect, in either entering the home or during their brief stay.  Under these circumstances, the only reasonable conclusion is that defendants did not require a warrant to enter the Georges' home and no Fourth Amendment violation occurred.

6

## 2. Unlawful Seizure Claim

The text of the Fourth Amendment applies equally to "effects" taken by law enforcement. A dog qualifies as "effects." Altman v. City of High Point, 330 F.3d 194, 203 (4th Cir. 2003)(observing that "dogs merit protection under the Fourth Amendment. The common law personal property rights that attached to dogs were at least as strong as those that have been held sufficient by the Court to qualify other objects as 'effects' entitled to Fourth Amendment protection.").

Inasmuch as "'[i]t is a basic principle of Fourth Amendment law that . . . seizures inside a home without a warrant are presumptively unreasonable," Humane Officer's Coll's taking of the dog must be carefully scrutinized. Hunsberger, 570 F.3d 546, 553 (4th Cir. 2009) (quoting Payton v. New York, 445 U.S. 573, 586 (1980) (internal quotation marks omitted)); Altman, 330 F.3d at 204 ("A Fourth Amendment 'seizure' of personal property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"). That scrutiny is applied according to another well-settled standard:

> In order for the officers' warrantless seizures of the plaintiffs' dogs to be constitutional, the seizures must have been "reasonable." A seizure of personal property conducted without a warrant is presumptively

> unreasonable. Under the basic reasonableness calculus, a court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interest against the importance of the governmental interests alleged to justify the intrusion." The reasonableness calculus is objective in nature; it does not turn upon the subjective intent of the officer.

**Altman**, 330 F.3d at 205 (citation omitted).

As noted, in their portion of the integrated pretrial order, the Georges forecast that Deputy Vernon would be implicated at trial in the dog's seizure. He was not. There was no evidence presented that Deputy Vernon directed or assisted in any way in Humane Officer Coll's taking of the dog. Deputy Vernon is thus entitled to judgment as a matter of law on this claim on that basis.

Respecting Humane Officer Coll, the objective standard applicable in this Fourth Amendment context reduces to whether a reasonable humane officer faced with the foregoing circumstances, and understanding the statutory obligations imposed upon him, would leave an animal unattended in a home for an indefinite period of time knowing that the animal's owner has been placed in custody.

The intrusion on the Georges' ownership and possessory interests was minimal at best. Ms. George lacked the

companionship of the animal during her incarceration, which would have occurred in any event. Mr. George shared minimal care responsibilities for the dog. Its brief absence from the home, then, is difficult to characterize as anything more than a trifle as to him. Further, the Georges actually received an unmerited benefit from the seizure that enhanced the dog's value and longevity. It received, for the first time, its proper license and required immunizations.

The governmental interests supporting the deprivation are weighty in comparison. West Virginia Code section 7-10-1 provides in pertinent part that any person acting as a humane officer:

> shall investigate all complaints made to him . . . of cruel or inhumane treatment of animals within the county and he or she shall personally see that the law relating to the prevention of cruelty to animals is enforced. The wilful failure of such designee to investigate any complaint made to him . . . and to take proper measures in such case or to perform his or her duty in any other respect may constitute good cause for removal from employment.

Id. Section 7-10-2(a) additionally provides that "[i]t is the duty of humane officers to prevent the perpetration or continuance of any act of cruelty upon any animal . . . ." Id. § 7-10-2(a). Most importantly, section 7-10-4(a) directs humane officers to "take possession of any animal . . . known or

9

believed to be abandoned, neglected, [or] deprived of necessary sustenance . . . ."  W. Va. Code § 7-10-4(a).

During his testimony, Humane Officer Coll expressed concerns about the dog receiving proper care and sustenance during Ms. George's absence.  He had no reason to believe anyone else resided there.  Had he harbored such a suspicion, he could only speculate about when, if at all, the co-occupant would return home.[1]

The prudent, and indeed the only rational, choice under the circumstances was to seize the dog, assuring its safety and, incidentally, the integrity of the home and its contents.  Based upon the evidence presented at trial as a matter of law, (1) Humane Officer Coll did not require a warrant for the dog's seizure at the time of Ms. George's arrest, and (2) his taking of the animal was reasonable and in accordance with the protections secured to the Georges under the Fourth Amendment.

---

[1] It may also be observed that a domestic animal left unattended for a significant period of time would be expected to engage in any manner of mischief ranging from minor property damage to much worse.  When one considers that electrical cords and plastic lavatory supply lines are present in virtually every home in America, it is easy to imagine many unfortunate resultant outcomes.  Leaving a dog alone in the home under these circumstances would certainly threaten a humane officer's prospects for continued employment.  It might also result in him having to defend a civil lawsuit.

## III.

The court, accordingly, and consistent with its analysis from the bench on March 22, 2011, ORDERS as follows:

1. That defendants' separate motions for judgment as a matter of law be, and they hereby are, granted; and

2. That this action be, and it hereby is, dismissed with prejudice and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: March 24, 2011

John T. Copenhaver, Jr.
United States District Judge